## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**DR. ANGELA JOSEPH,**

           Plaintiff,                      Civil No. 19-10828

v.                                  Honorable Judith E. Levy

**ROBERT L. WILKIE**, Secretary,
Department of Veterans Affairs,

           Defendant.

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

    Defendant Robert L. Wilkie, through his attorneys, Matthew Schneider, United States Attorney for the Eastern District of Michigan, and James Carty, Assistant United States Attorney, submits this reply brief in support of his Motion for Summary Judgment. (ECF No. 27).

                             Respectfully submitted,

                             **MATTHEW SCHNEIDER**
                             United States Attorney

                             */s/ James Carty*
                             **JAMES CARTY (P-74978)**
                             Assistant United States Attorney
                             Office: (313) 226-9705/9566
                             Email: James.Carty@usdoj.gov

Dated: November 19, 2020         *Attorneys for Defendant*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ……………………………………………………...ii

A.   Joseph's disagreement with reviews of her care cannot
     establish pretext …………………………………………………………..1

B.   Joseph was a probationary employee ……………………………………..1

C.   The VA did not deviate from, or violate, its peer review process ……..……..3

D.   The Summary Review Board was properly composed ………………………4

E.   The "fair hearing" board finding is not evidence of pretext ………………....5

F.   Joseph's "cat's paw" theory fails on every element …………………………....5

G.   Joseph's response fails to address the fundamental flaws
     in her claim …………………………………………………………….........7

H.   Addendum regarding disputed facts ………………………………………...8

CERTIFICATION OF SERVICE …………………………………………………9

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>:

*Bacon v. Honda of America Mfg., Inc*., 192 F. App'x 337
    (6th Cir. 2006) ………………………………………………………………1

*Chattman v. Toho Tenax Am., Inc*., 686 F.3d 339 (6th Cir. 2012) ……………...6

*Griffin v. Finkbeiner*, 689 F.3d 584 (6th Cir. 2012) ………………………….6

*Majewski v. Automatic Data Processing, Inc*., 274 F.3d 1106
    (6th Cir. 2001) …………………………………………………………………1

*Staub v. Proctor Hospital*, 562 U.S. 411 (2011) …………………………………..6

**A.      Joseph's disagreement with reviews of her care do not establish pretext**

Title VII does not permit a Court to act as a medical review board to decide whether Plaintiff Angela endangered patient safety in three specific cases. Instead, the law asks whether Joseph can establish that her firing was discriminatory. In her response, Joseph chiefly cites her deposition, personal notes, and her presentation to the summary review board – often simultaneously – and refuses to concede a single mistake, instead blaming others for any patient care issues. But Joseph's personal opinions are irrelevant here. When an employer has an honest belief in its reason for discharging an employee based on "particularized facts that were before it at the time the decision was made[,]" the employee cannot establish pretext simply by saying the employer was incorrect. *Majewski v. Automatic Data Processing, Inc*., 274 F.3d 1106, 1117 (6th Cir. 2001); *see also Bacon v. Honda of America Mfg., Inc*., 192 F. App'x 337, 345 (6th Cir. 2006) ("an employee's view of his own satisfactory performance cannot establish pretext where the employer reasonably relied on specific facts before it indicating that the employee's performance was poor.")

**B.      Joseph was a probationary employee**

Joseph asserts for the first time in her response that she was not a probationary employee, claiming the VA calculated her probationary period incorrectly. (ECF No. 30, PageID.691-692.) Steve Savino, chief of employee and labor relations for the

VA region overseeing Michigan, explained the calculation of Joseph's start date in a Rule 30(b)(6) deposition. The probationary period for a full-time permanent VA physician is two years. (**Exhibit 1**, Savino Trans., at 13:14-21). A federal form, the SF-50, documents when the period starts (*Id*. at 15:9-15). Joseph's SF-50 shows that her probationary period began on October 30, 2016. (*Id*. at 21:1-8, 42:15-25). Joseph worked at the VA as a fee-based physician until September 1, and then worked on a temporary full-time appointment until October 30. (*Id*. at 21:9-25). The temporary period does not count toward the probationary period. (*Id*. at 42:15-43:8). Savino testified that it is "common" for physicians to serve in a temporary appointment because pre-employment requirements such as drug-testing, verification of licensure, and a compensation panel take time to complete. (*Id*. at 43:9-23).

On June 28, 2016, a VA board mistakenly voted to approve Joseph for a full-time appointment. (ECF No. 30-4, PageID.790-792.) The board action itself was not an appointment, but one of several pre-employment requirements that must be met before a physician can begin a permanent appointment. (**Exhibit 1***, at 33:19-35:9; 44:8-45:2). On October 13, 2016, the Saginaw VA HR department issued a memorandum that noted the mistake, explained why it happened, and corrected it. (ECF No. 30-5, PageID.794.) The memo's second paragraph explains that Joseph could not be appointed to a permanent position prior to receipt of drug test results. (*Id*.) The memo was signed Medical Director Ginny Creasman. (*Id*.)

Joseph argues the corrected appointment date is evidence of discriminatory pretext.[1] The evidence shows otherwise. The reason for the correction was the pending drug test. In addition, Creasman left her job in February 2018, and had no role in Joseph's firing. (ECF No. 30-12, PageID.859 at 33:22-34:6.)

## C.   The VA did not deviate from, or violate, its peer review process

Joseph asserts that then-chief of staff Barbara Bates' decision to seek an outside review of Joseph's care violated the peer review process, deviated from policy, and is evidence of pretext. Joseph confuses peer review with administrative review. Peer review is an educational process where providers share opinions on medical problems. (ECF No. 27-23. PageID.429-430 at 68:1-69:4). Bates' decision to seek an outside review of Joseph's care was not a substitute for peer review, it was part of Bates' administrative review process. (*Id.* at PageID.430 at 69:5-22). It was also not unique: Bates had previously sought an outside review when questions were raised about a radiologist's care. (*Id.* at 69:23-70:4). Joseph provides no evidence showing that Bates violated policy or did not have discretion to seek an outside review. Bates' decision to seek an outside opinion shows thoroughness, fairness, and impartiality, not pretext. The fact that Joseph considered the outside review equivalent to a peer review is, unsupported opinion, not evidence.

---

[1] Notably, Joseph does not ask the Court to find that she was not a probationary employee. Such a claim would be improper, given it was not pleaded in her Complaint, and would have required a different pre-suit procedure.

3

**D.     The Summary Review Board was properly composed**

Joseph asserts that the board which recommended her firing was improper because none of the members had her specific job title, "hospitalist," and because the board included a nurse practitioner, Virginia Rolland. This is also incorrect.

First, it is undisputed that the board, including Rolland, was picked by Dr. Thomas Campana, the acting medical center director. (ECF No. 27-17, PageID.418, at 21:1-24:20.) Joseph does not accuse Campana of any bias or wrongdoing, making this entire argument irrelevant. Second, VA Handbook 5021, Part III, governs employment actions involving probationary Title 38 employees, such as physicians, and VA Handbook 5005, part II, Chapter Three, governs the makeup of a summary review board. (**Exhibit 2**, Berghoff Dec., at ¶¶5-8 and Ex. A, Ex. B). Summary review board members must be at a grade and level equal to (or higher than) the employee in front of the board, and cover a range of practice. (*Id.* at ¶9). There is no requirement that members share the same job title as the employee. (*Id.* at ¶12). The three physician board members on Joseph's board all had grades and levels equal to Joseph's on the date of her review. (*Id.* at ¶16). All three physician board members were also board certified in their specialties, while Joseph was not. Two members were qualified to fill a hospitalist role at the facility. (*Id.* at ¶17). Rolland, the nurse practitioner, was eligible to sit on the board as an appropriately qualified individual from another profession. (*Id.* at Ex. B). The board was properly composed.

**E.     The "fair hearing" board finding is not evidence of pretext**

Joseph argues that because a second VA board decided not to report her to the National Practitioner Data Bank (NPDB), the first board's finding is evidence of discriminatory pretext. This is a misunderstanding of the two boards and their roles.

The post-termination fair hearing takes place because the VA believes that the "summary review conducted by the PSB is not sufficient due process for the purposes of reporting the provider to the NPDB." (**Exhibit 3**, Fair Hearing Guidelines, emphasis added).  The fair hearing board, "has nothing to do with the separation during probationary period, which is a separate and distinct process previously completed." (*Id*.) The boards have different roles, different process, ***and potentially different outcomes***. This makes sense: Just because the VA may choose to end a probationary employment relationship does not mean that the physician should automatically be reported to the NPDB for malpractice.  It would be wrong to hold the second board's conclusions against the VA, penalizing the VA for providing more due process. Finally, it does not matter which board is right, only that the first board had particularized reasons for its recommendation.

**F.     Joseph's "cat's paw" theory fails on every element**

Joseph argues that Sally Lewis, assistant chief of medicine, made two attenuated race-related comments, incorrectly attributed criticism of Joseph's care to Dr. William Trimble, and was subject to two EEO complaints. Because Lewis did

not fire Joseph, Joseph must pursue a "cat's paw" theory of liability. In a cat's paw case, the plaintiff seeks "to hold [her] employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision." *Staub v. Proctor Hospital*, 562 U.S. 411, 415 (2011). Cat's paw liability requires proving: (1) that Lewis intended to cause an adverse employment action for discriminatory purposes; and (2) that the discriminatory actions were the proximate cause of the ultimate employment action. *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 351 (6th Cir. 2012). But if an independent investigation results in an adverse action for reasons unrelated to the original biased action, the employer will not be liable. *Id*.

Joseph has not produced evidence that Lewis intended to cause an adverse employment action, let alone did so with discriminatory intent. The alleged racial comments are attenuated and non-discriminatory. Lewis' previous EEO complaints are inadmissible under *Griffin v. Finkbeiner*, 689 F.3d 584, 599 (6th Cir. 2012), because Joseph has failed to allege sufficient facts to meet any part of the Sixth Circuit's six-factor test for "me too" evidence. Trimble did deny making a comment that Lewis attributed to him, but there is no evidence this was more than an error, and the independent Code Blue investigative report received by Bates correctly summarized Trimble's view of the Code Blue. (ECF No. 27-21, PageID.485.) There is also no casual nexus between Lewis' alleged discrimination and the adverse action, as required by *Chattman*, 686 F.3d at 350. Lewis did not encourage any of

6

the complaints lodged against Joseph. Bates testified that she primarily relied on physician Anthony Albito's opinions in suspending Joseph. In firing Joseph, Bates acted on the recommendation of the summary review board, which conducted its own independent investigation, reviewing the complaints, the underlying medical records, and interviewing Joseph and Lewis, thereby severing any alleged original biased action by Lewis. Notably, Joseph did not raise any claim of discrimination – past or present – in front of the summary review board or to Bates.

Christina Tokarski is a nurse manager, does not supervise physicians, had no link to these events beyond passing on two of the six complaints against Joseph, and there is no evidence for Joseph's claims that she engineered the complaints for discriminatory reasons. Joseph's "evidence" of unrelated discriminatory actions by Tokarski is either hearsay or inadmissible "me too" evidence.

## G.    Joseph's response fails to address the fundamental flaws in her claim

Joseph alleges many disparate race-related events – none of which she raised prior to being investigated – but offers no evidence to show that concerns about her care were not genuine, or that the summary review board or Bates had improper motives in respectively recommending her firing and firing her. She has also failed to show that the incidents that form the basis of her retaliation claim involved protected activity or discrimination. Finally, she admits that she has failed to mitigate her damages. Defendant's motion should, therefore, be granted in all parts.

**H.     Addendum regarding disputed facts**

Joseph's response brief included an exhibit numbering each factual sentence from Defendant's motion for summary judgment. Joseph then listed the facts that she admitted and those that she denied, with the grounds for each denial. Neither the local rules, nor this Court's practice guidelines, require this procedure. Should the Court finds such information useful, Defendant has attached Joseph's fact section as **<u>Exhibit 4</u>**, Joseph Response Facts, and has listed the facts it disputes and the grounds for those disputes with each numbered sentence.

Respectfully submitted,

**MATTHEW SCHNEIDER**
United States Attorney

By: */s/ James J. Carty*
&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;
**JAMES J. CARTY (P74978)**
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Office: (313) 226-9705
Facsimile: (313) 226-3271
Dated: November 19, 2020        Email: james.carty@usdoj.gov

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on November 19, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Tom Harrington
***Attorney for Plaintiff***

*/s/ James J. Carty*
**JAMES J. CARTY (P74978)**
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Office: (313) 226-9705
Facsimile: (313) 226-3271
Email: james.carty@usdoj.gov