## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**DR. ANGELA JOSEPH,**

      Plaintiff,

Civil No. 19-10828

Honorable Judge Judith E. Levy

v.

**ROBERT L. WILKIE,** Secretary
Department of Veterans Affairs,

      Defendant.



F I L E D
OCT 2 1 2021
U.S. DISTRICT COURT
FLINT, MICHIGAN

## NOTICE FOR MOTION FOR RECONSIDERATION OF THE ORDER
## FOR SUMMARY JUDGMENT

I, Plaintiff Angela Joseph was told by counsel to appear pro se.  I humbly request reconsideration of

the order for Summary Judgment so that the court my consider documents which were somehow

missed by counsel, and which allow for consideration of the facts relevant to the case.

Respectfully submitted,

**ANGELA JOSEPH, M.D.**
Plaintiff Pro Se
C.P.: 810-869-8694
Email: josep009@hotmail.com

**LIST OF EXHIBITS:**

1. EXHIBIT 1:  Compensation Panel Action

2. EXHIBIT 2:  Credit Union Financial Statement

3. EXHIBIT 3:  Saginaw VA work schedule for May to August, 2018

4. EXHIBIT 4:  Email of appointment with HR, June 2016; VA Handbook 5005/70
   Creditable Service; Email of Pharmacy Training; Email of work schedule;
   Work schedule 2/2016-3/2016; Work schedule 2/2016-4/2016.

5. EXHIBIT 5: VA DIRECTIVE 5979, HARASSMENT PREVENTION POLICY

6.  EXHIBIT 6:  VA DIRECTIVE 5021/17

7.  EXHIBIT 7:  VA HANDBOOK 5021/25

8.  EXHIBIT 8:  VA HANDBOOK 5005/129

9.  EXHIBIT 9:  MCM 11-24 RAPID RESPONSE; MCM 11-05A CODE BLUE

10. EXHIBIT 10:  Test to Dr. Albito; American Heart Assoc. ACLS Provider Manual page
    59, Acute Coronary Syndrome Case; Email 3/2017 Monitor settings.

11. EXHIBIT 11:  COPD patient case note, pages 2

12. EXHIBIT 12:  Photograph of Pain Management Program

2

**EXPLANATION OF EXHIBITS:**

EXHIBIT 1:  After a Board Action was taken on June 28, 2016, a Compensation Panel Action was taken by HR on August 25, 2016 per VA policy to convert me to a full-time permanent position. This was in accordance with VA Handbook 5005/129, Part II, Chapter 3 under Selection and Appointment Action. No other such action was taken by HR at any other time since I was already converted to a full-time permanent position after undergoing full medical testing and three-day orientation in May, 2016.

EXHIBIT 2:  Credit Union Financial Statements from July, August and September, 2016 showing direct salary deposits.

EXHIBIT 3:  Work schedule starting May, 2018 to August, 2018 showing Dr. Gladka working as Hospitalist in my tour of duty while I was detailed to the basement in suspension twelve hours per day.

EXHIBIT 4:  Email from Medicine Department secretary, Michele showing my meeting with HR on June 27, 2016 in regards to my full-time appointment.
VA HANDBOOK 5005/70, PART II, CHAPTER 3, d. Creditable Service. The following service is creditable toward completion of the probationary period. (1) Continuous service in an appointment under 38 U.S.C. 7401 …
Email from Michele showing Pharmacy Training in 2016 as part of preparation for position.
Emails and schedules from Sally Lewis showing continuous service.

EXHIBIT 5:  VA Harassment Policy, specifically states, "The VA further prohibits employees from engaging in harassing conduct for any reason regardless of whether the conduct is related to one of the Federally protected bases".

3

EXHIBIT 6: VA DIRCTIVE 5021/17 and 5021 policies of the VA facilities taking a major adverse action such as suspension and requirement for an Advance Notice, Evidence File, access to information, how a final impartial decision is made, which was denied to me.

EXHIBIT 7: VA HANDBOOK 5021/25: how penalties are assessed which was not afforded to me.

EXHIBIT 8: COMPOSITION OF BOARDS: physicians comprising the PSB were not knowledgeable on managing inpatients or emergency cardiac and pulmonary conditions, which is why their decisions were overturned by a panel of Internal Medicine physicians, irrespective of what purpose each panel was used for.

EXHIBIT 9: Medical Center Memorandums for Rapid Response and Code Blue which do not define use of "monitoring" as the Standard of Care. The use of an AED device in a responsive patient is Non-Standard use of the device.

EXHIBIT 10: Text sent to Dr. Albito to give information on the use of an AED, which is not used because a patient has angina or chest pain.
Page from American Heart Association guidelines showing the appropriate management of a patient with chest pain or angina which was done by me despite the resistance of nursing and respiratory staff, which resulted in a good outcome for the patient, there is no evidence that she had a heart attack.
Email to Dr. Albito, March 2017 in which I defined the criteria for monitoring patient throughout the facility.

EXHIBIT 11:  Pages from the chart of COPD patient showing that all three cases were discussed with NP Lewis, the supervisor at the time, and she agreed with management and plans on May 7 and 8, only to change them two weeks later.

EXHIBIT 12: Complete Pain Management Program developed by me while in suspension, including writing a booklet and a novel algorithm to help providers manage veterans with pain.

## **CONCLUSION:** `

Honorable Judge I am requesting that this Motion for Reconsideration of the Order for Summary

Judgment be granted in the interest of justice when a proper decision can be made after consideration

of all the relevant facts of the case. I only realized that these facts were missing after my former

counsel sent me the files and I noticed that these important documents had been left out.

Respectfully submitted:

By: Angela Joseph, M.D.
Plaintiff pro se
1102 Woodside Drive
Flint, MI 48503
C.P. 810-869-8694
Email: josep009@hotmail.com

Dated: October 18, 2021

## CERTIFICATION OF SERVICE

I hereby certify that on October 21, 2021, I filed the foregoing motion with the Clerk of the Court in person at the Clerk's Office, Federal Building and US Courthouse, 600 Church Street, Room 140, Flint, MI 48502, and a notification of such filing will be mailed to the following: James J. Carty, Attorney for the Defense, *by first-class mail of the U.S. Post office*

Angela Joseph, M.D.
Pro Se Representative
1102 Woodside Drive
Flint, MI 48503
C.P. 810-869-8694
Email: josep009@hotmail.com

7

# EXHIBIT 1

| **VA** Department of Veterans Affairs | **COMPENSATION PANEL ACTION** |
|---|---|

| NAME | | LAST 4 DIGITS OF SSN | DATE |
|---|---|---|---|
| Joseph, Angela, M.D. | | 6947 | 08/25/2016 |

| SERVICE/LOCATION | ASSIGNMENT | CURRENT TIER | ANNUAL SALARY |
|---|---|---|---|
| Medical Service/Saginaw | Physician | | |

| Initial Pay Determination ⦿ | Biennial Review ○ | Other *(explain below)* ○ |
|---|---|---|

| SUPERVISOR'S APPROVAL *(Print name below)* | SIGNATURE | | DATE |
|---|---|---|---|
| Barbara Bates, MD, MBA; Chief of Staff | Barbara Bates | | 8/25/2016 |

*Consideration of the Panel shall take into account the (1) level of experience in a specialty or assignment; (2) need for the specialty/assignment at the facility; (3) health care labor market for the specialty/assignment; (4) board certifications; (5) accomplishments in the specialty or assignment; (6) prior VHA experience; (7) other considerations/comments; and (8) non-foreign cost –of –living allowance.*

1. Level of experience in a specialty or assignment: Dr. Joseph has been working as a full time provider practicing since October 2001. She has experience in Anesthesiology, Critical Care, Pain Management,and home-care medicine.

2. Need for the assignment at the facility: This position is organizationally aligned under Medical Service. This Urgent Care provider will be practicing at the Saginaw, MI Aleda E. Lutz VAMC.

3. Health Care Market:
Sullivan Cotter Healthcare Survey
P90  P75   MED  P25  P10  AVG
347.4 279.8 226.6 196.8 176.4 247.5

4.Board Certification status: Board Eligible in Anesthesiology

5. List (i.e., bullet point) Major Accomplishments in your field: Current memberships in the American Society of Anesthesiology, American Medical Association, and Society of Critical Care Medicine.

6. Number of years serving with the VA: 1.5 years

7. Other considerations: N/A

VA FORM
DEC 2005 **10-0432A**

DEF-1265

Any data typed after screen scrolls will not print

Based on local labor market area, the panel recommends a market pay of $93,746.

| ASSIGNMENT/ PAY TABLE | | TIER | PAY RANGE OR RATE |
|---|---|---|---|
| Primary Care/ P001 | | 1 | $99,957-$215,000 |

**LOCATION OF PANEL**  ☐ VACO  ☐ VISN  ☐ _____  ☒ VAMC  Saginaw, MI

| CHAIRPERSON (Print name below) | SIGNATURE | DATE |
|---|---|---|
| Dr. Matthew Miller | | Aug 25, 2016 |
| MEMBER (Print name below) | SIGNATURE | DATE |
| Dr. Clutter | | Aug 25, 2016 |
| MEMBER (Print name below) | SIGNATURE | DATE |
| Dr. Campana | | Aug 25, 2016 |
| MEMBER(Print name below) | SIGNATURE | DATE |
| | | Aug 25, 2016 |
| HR TECHNICAL ADVISOR (Print name below) | SIGNATURE | DATE |
| Amanda Roberts | Amanda Roberts | Aug 25, 2016 |

| ANNUAL RATE OF PAY (Base Pay + Market Pay) | $107,687 + $93,746 = $201,433 |
|---|---|

**COMMENTS**

| APPROVAL (Print name and title) | SIGNATURE | DATE |
|---|---|---|
| GINNY L. CREASMAN, Medical center Director | Ginny L. Creasman | 8/26/2016 |

VA FORM
DEC 2005 **10-0432A**

Page 2 of 2

DEF-1266

This is an 'official' document generated from the eOPF system.

# EXHIBIT 2

```
FM FINANCIAL CREDIT UNION         STOPT
606 STEVENS ST., P.O. BOX 97      MAILCODE: 5        810  239 7655
FLINT, MI 48501 0097

     810  239 7655                 WWW.FMFINANCIALCU.ORG
```

ANGELA JOSEPH
1102 WOODSIDE DR
FLINT MI 48503 5341

                              1     7 01 2016  7 31 2016

```
                -- EMAIL --
            REGULAR SHARE ACCOUNT        SHARE TRAILER: 00
0701 0701 BEGINNING PERIOD BALANCE                          12,538.71
0701 0701 SHARE DIVIDEND                        6.11        12,544.82
            FOR THE PERIOD 04/01/2016 THROUGH 06/30/2016
            ANNUAL PERCENTAGE YIELD EARNED   0.23%
0706 0706 SHARE WITHDRAWAL                     700.00-      11,844.82
0706 0706 SHARE DEPOSIT (JOURNAL)               12.00       11,856.82
            REFUND CASHIER CK FEES FR 6-22-16
0713 0713 EFT SHARE DEPOSIT (ACH)            1,091.36       12,948.18
            FED SALARY DFAS-CLEVELAND  ZPV381600
0714 0714 SHARE WITHDRAWAL (TRANSFER)        2,951.02-       9,997.16
0715 0715 SHARE WITHDRAWAL (TRANSFER)        2,439.22-       7,557.94
0715 0715 SHARE WITHDRAWAL (JOURNAL)             1.25-       7,556.69
            IDENTITY SAFE CHOICE PROTECTION
0718 0718 EFT SHARE WITHDRAWAL (ATM)            20.00-       7,536.69
0718 0718 ATM SERVICE CHG                        1.00-       7,535.69
            1500 Weiss St Saginaw MI Team One Credit Uni
0718 0718 SHARE WITHDRAWAL (TRANSFER)        3,106.00-       4,429.69
0720 0720 SHARE DEPOSIT (CHECK)             10,000.00       14,429.69
0720 0720 SHARE WITHDRAWAL (CHECK)           9,077.35-       5,352.34
0720 0720 SHARE WITHDRAWAL (CHECK)             540.00-       4,812.34
0720 0720 CHECK WDL FEE                          3.00-       4,809.34
0725 0725 SHARE WITHDRAWAL (TRANSFER)          211.00-       4,598.34
0727 0727 EFT SHARE DEPOSIT (ACH)            9,349.29       13,947.63
►           FED SALARY DFAS-CLEVELAND  ZPV381600
0730 0730 SHARE WITHDRAWAL (TRANSFER)        4,000.00-       9,947.63
            TRANSFER TO ACCOUNT XXXXXXXX72  TRLR 91
0730 0730 SHARE WITHDRAWAL                   2,000.00-       7,947.63
0731 0731 ENDING PERIOD BALANCE                             7,947.63
------------------------------------------------------------------------
            LOAN ACCOUNT                 LOAN TRAILER: 31*

            VARIABLE RATE LOAN - PERIODIC RATE(S) MAY VARY
            CURRENT LOAN PAYMENT DUE ON  0 00 0000
            DELINQUENT AMOUNT          $.00
              ANNUAL PERCENTAGE RATE  8.2500%
              DAILY PERIODIC RATE IS .022603%
0701 0701 BEGINNING PERIOD BALANCE                                .00
0731 0731 NEW BALANCE                                             .00
***************************** THIS PERIOD ***** YEAR-TO-DATE ******************
            TOTAL LOAN FEES            .00             .00
            TOTAL INTEREST CHARGES     .00             .00
------------------------------------------------------------------------
            SHARE DRAFT ACCOUNT          DRAFT TRAILER: 91
0701 0701 BEGINNING PERIOD BALANCE                          3,488.77
0701 0701 DRAFT DIVIDEND                         .15        3,488.92
            FOR THE PERIOD 06/01/2016 THROUGH 06/30/2016
            ANNUAL PERCENTAGE YIELD EARNED   0.06%
0705 0704 EFT DRAFT WITHDRAWAL (ATM)            40.00-       3,448.92
0705 0704 ATM SERVICE CHG                        1.00-       3,447.92
            1500 Weiss St Saginaw MI Team One Credit Uni
0705 0705 PAID SHARE DRAFT #1077             2,000.00-       1,447.92
0711 0711 PAID SHARE DRAFT #1079               157.94-       1,289.98
0711 0711 PAID SHARE DRAFT #1078               272.56-       1,017.42
0712 0712 PAID SHARE DRAFT #1080               570.00-         447.42
```

```
FM FINANCIAL CREDIT UNION          STOPT
606 STEVENS ST., P.O. BOX 97       MAILCODE: 5        810  239 7655
FLINT, MI 48501 0097
                                   WWW.FMFINANCIALCU.ORG
        810  239 7655
```



```
      ANGELA JOSEPH
      1102 WOODSIDE DR
      FLINT MI 48503 5341
                                        1    8 01 2016  8 31 2016
```

```
                  -- EMAIL --
           REGULAR SHARE ACCOUNT         SHARE TRAILER: 00
0801 0801 BEGINNING PERIOD BALANCE                              7,947.63
0802 0802 SHARE WITHDRAWAL (TRANSFER)               365.92-     7,581.71
0803 0803 SHARE WITHDRAWAL                        1,500.00-     6,081.71
0804 0804 SHARE WITHDRAWAL (TRANSFER)             1,005.00-     5,076.71
0808 0807 EFT SHARE WITHDRAWAL (ATM)                 20.00-     5,056.71
0808 0807 ATM SERVICE CHG                             1.00-     5,055.71
           1500 Weiss St Saginaw MI Team One Credit Uni
0810 0810 EFT SHARE DEPOSIT (ACH)                15,491.78    20,547.49
         FED SALARY DFAS-CLEVELAND   ZPV381600
0811 0811 SHARE WITHDRAWAL (TRANSFER)               480.00-    20,067.49
           TRANSFER TO ACCOUNT XXXXXXXX72  TRLR 91
0811 0811 SHARE WITHDRAWAL (TRANSFER)               244.94-    19,822.55
           ADTPAPACH ADT SECURITY SER
0812 0812 EFT SHARE WITHDRAWAL (ATM)                 80.00-    19,742.55
0812 0812 ATM SERVICE CHG                             1.00-    19,741.55
           1500 Weiss St Saginaw MI Team One Credit Uni
0815 0815 SHARE WITHDRAWAL (TRANSFER)             3,245.73-    16,495.82
0815 0815 SHARE WITHDRAWAL (JOURNAL)                  1.25-    16,494.57
           IDENTITY SAFE CHOICE PROTECTION
0819 0819 SHARE WITHDRAWAL (TRANSFER)               171.90-    16,322.67
0819 0819 TRANSFER FEE                                5.00-    16,317.67
           TRANSFER TO ACCOUNT XXXXXXXX72  TRLR 91
0819 0819 SHARE WITHDRAWAL (TRANSFER)             6,005.00-    10,312.67
0824 0824 EFT SHARE DEPOSIT (ACH)                 6,442.51    16,755.18
         FED SALARY DFAS-CLEVELAND   ZPV381600
0825 0825 SHARE WITHDRAWAL (TRANSFER)             1,005.00-    15,750.18
0831 0831 ENDING PERIOD BALANCE                              15,750.18
---------------------------------------------------------------------
           SHARE DRAFT ACCOUNT          DRAFT TRAILER: 91
0801 0801 BEGINNING PERIOD BALANCE                              4,000.05
0801 0801 PAID SHARE DRAFT #1093                  3,000.00-     1,000.05
0802 0802 EFT DRAFT WITHDRAWAL (ACH) #1095          178.47-       821.58
           PURCHASE FLIN MI JO-ANNS          TELECHK 8
0802 0802 PAID SHARE DRAFT #1092                  1,182.50-       360.92-
0802 0802 DRAFT DEPOSIT (TRANSFER)                  365.92          5.00
0802 0802 OVERDRAFT CHARGE                            5.00-          .00
0804 0804 PAID SHARE DRAFT #1089                  1,000.00-     1,000.00-
0804 0804 DRAFT DEPOSIT (TRANSFER)                1,005.00          5.00
0804 0804 OVERDRAFT CHARGE                            5.00-          .00
0811 0811 DRAFT DEPOSIT (TRANSFER)                  480.00        480.00
0811 0811 EFT DRAFT WITHDRAWAL (ACH)                475.00-         5.00
0811 0811 OVERDRAFT CHARGE                            5.00-          .00
           CPC-CLIENT STATE FARM RO 08
0811 0811 DRAFT WITHDRAWAL (ACH)                    239.94-       239.94-
           ADTPAPACH ADT SECURITY SER
0811 0811 DRAFT DEPOSIT (TRANSFER)                  244.94          5.00
           ADTPAPACH ADT SECURITY SER
0811 0811 OVERDRAFT CHARGE                            5.00-          .00
           *TRANSFER CHG*
0815 0815 PAID SHARE DRAFT #1096                    240.73-       240.73-
0815 0815 PAID SHARE DRAFT #1098                  3,000.00-     3,240.73-
0815 0815 DRAFT DEPOSIT (TRANSFER)                3,245.73          5.00
0815 0815 OVERDRAFT CHARGE                            5.00-          .00
0819 0819 DRAFT DEPOSIT (TRANSFER)                  171.90        171.90
```

FM FINANCIAL CREDIT UNION            STOPT
606 STEVENS ST., P.O. BOX 97         MAILCODE: 5              810   239 7655
FLINT, MI 48501 0097

                                     WWW.FMFINANCIALCU.ORG

       810   239 7655



       ANGELA JOSEPH
       1102 WOODSIDE DR
       FLINT MI 48503 5341

                                        1      9 01 2016  9 30 2016


                    --  EMAIL  --
              REGULAR SHARE ACCOUNT          SHARE TRAILER: 00
0901 0901 BEGINNING PERIOD BALANCE                              15,750.18
0901 0901 SHARE WITHDRAWAL (TRANSFER)              8,000.00-     7,750.18
0901 0901 TRANSFER FEE                                5.00-     7,745.18
          TRANSFER TO ACCOUNT XXXXXXXX72   TRLR 91
0902 0902 SHARE WITHDRAWAL (TRANSFER)               304.99-     7,440.19
0906 0906 SHARE WITHDRAWAL (TRANSFER)             1,005.00-     6,435.19
0907 0907 EFT SHARE DEPOSIT (ACH)                 6,210.70     12,645.89
          FED SALARY DFAS-CLEVELAND   ZPV381600
0913 0913 EFT SHARE WITHDRAWAL (ATM)               202.00-    12,443.89
0913 0913 ATM SERVICE CHG                            1.00-    12,442.89
          901 NORTH VAN DYKE ROAD BAD AXE MI Walmart S
0915 0915 SHARE WITHDRAWAL (TRANSFER)              505.00-    11,937.89
0915 0915 SHARE WITHDRAWAL (JOURNAL)                 1.25-    11,936.64
          IDENTITY SAFE CHOICE PROTECTION
0916 0916 SHARE WITHDRAWAL (TRANSFER)             2,240.17-     9,696.47
0919 0919 SHARE WITHDRAWAL (TRANSFER)              591.82-     9,104.65
0921 0921 EFT SHARE DEPOSIT (ACH)                  535.68      9,640.33
          FED SALARY DFAS-CLEVELAND   ZPV381600
0922 0922 SHARE WITHDRAWAL                        3,000.00-     6,640.33
0923 0923 SHARE WITHDRAWAL (TRANSFER)            1,005.00-     5,635.33
0928 0928 SHARE WITHDRAWAL (TRANSFER)              334.61-     5,300.72
0928 0928 TRANSFER FEE                               5.00-     5,295.72
          TRANSFER TO ACCOUNT XXXXXXXX72   TRLR 91
0929 0929 SHARE WITHDRAWAL (TRANSFER)              661.96-     4,633.76
0929 0929 TRANSFER FEE                               5.00-     4,628.76
          TRANSFER TO ACCOUNT XXXXXXXX72   TRLR 91
0930 0930 EFT SHARE WITHDRAWAL (ATM)                20.00-     4,608.76
0930 0930 ATM SERVICE CHG                            1.00-     4,607.76
          1500 Weiss St Saginaw MI Team One Credit Uni
0930 0930 EFT SHARE WITHDRAWAL (ATM)                40.00-     4,567.76
0930 0930 ATM SERVICE CHG                            1.00-     4,566.76
          1500 Weiss St Saginaw MI Team One Credit Uni
0930 0930 ENDING PERIOD BALANCE                                4,566.76
          A SHARE DIVIDEND OF     5.53 WILL BE POSTED ON 10 01 2016
--------------------------------------------------------------------------
          LOAN ACCOUNT                    LOAN TRAILER: 31*

          VARIABLE RATE LOAN - PERIODIC RATE(S) MAY VARY
          CURRENT LOAN PAYMENT DUE ON  0 00 0000
          DELINQUENT AMOUNT         $.00
               ANNUAL PERCENTAGE RATE  8.2500%
               DAILY PERIODIC RATE IS .022603%
0901 0901 BEGINNING PERIOD BALANCE                                   .00
0930 0930 NEW BALANCE                                                .00
******************************** THIS PERIOD ***** YEAR-TO-DATE ******************
          TOTAL LOAN FEES                 .00             .00

# EXHIBIT 3

Aleda E. Lutz VA Medical Cen
Run 09-13-2018 16:18
AcuStaf (c) 2018

Sub Unit: 111 HOSPITALIST
Posted Schedule- Detail
05-27-2018 To 06-23-2018

Report 47
Page 1

| Name | | | |
|---|---|---|---|
| DELOSSANTOS, MICHEL SECT 90:90-90 1 | | | |
| LEWIS, SALLY NP 90:90-90 1 | | | |
| BANERJEE, ARUNDHUTI PHYS 90:84-130 1 | | | |
| JOSEPH, ANGELA PHYS 0:69-69 1 | | | |
| MEHTA, DHIREN PHYS 90:75-86 1 | | | |
| PATTERSON, ALAN PHYS 90:84-84 1 | | | |
| ABALO, TOMAS PHYS 90:40-10 1 | | | |
| GLACKO, GALINA PHYS 0:72-92 1 | | | |
| HADDAD, NICHOLAS PHYS 0:0-0 1 | | | |
| DARGM, NICHOLAS PHYS 0:0-0 1 | | | |
| MEHTA, SUHAIMI PHYS 0:24-24 1 | | | |
| CATAQUIZ, DORIS PHYS 0:16-16 1 | | | |
| LOO, DANTE PHYS 0:94-106 1 | | | |

Almeda E. Lutz VA Medical Center
Run 08-13-2018 16:16
AcuStaf (c) 2018

Sub Unit 111 HOSPITALIST
Posted Schedule Detail
06-24-2018 To 07-21-2018

| | PP13 Sun 24 | Mon 25 | Tue 26 | Wed 27 | Thu 28 | Fri 29 | Sat 30 | Sun 1 | Mon 2 | Tue 3 | LH34 4 | Thu 5 | Fri 6 | Sat 7 | PP14 Sun 8 | Mon 9 | Tue 10 | Wed 11 | Thu 12 | Fri 13 | Sat 14 | Sun 15 | Mon 16 | Tue 17 | Wed 18 | Thu 19 | Fri 20 | Sat 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DEJASSANTOS, MICHEL SECT 80:80-80 1 | DAY OFF | 0830 1700 | 0830 1700 | 0830 1700 | 0830 1700 | 0830 1700 | DAY OFF | DAY OFF | 0830 1700 | 0830 1700 | 0830 1700 LH34 | 0830 1700 LH34 | 0830 1700 LA | DAY OFF | DAY OFF | 0830 1700 | 0730 1600 | 0830 1700 | 0830 1700 | 0830 1700 LA | DAY OFF | DAY OFF | 0830 1700 | 0830 1700 | 0830 1700 | 0830 1700 | 0830 1700 | DAY OFF |
| LEWIS, SALLY HP 80:80-80 1 | DAY OFF | 0800 1630 | 0800 1630 | 0800 1630 | 0800 1630 | 0800 1630 | DAY OFF | DAY OFF | 0800 1630 | 0800 1630 | 0800 1630 LA | 0800 1630 LA | 0800 1630 LA | DAY OFF | DAY OFF | 0800 1630 | 0800 1630 | 0800 1630 | 0800 1630 | 0800 1630 | DAY OFF | DAY OFF | 0800 1630 | 0800 1630 | 0800 1630 | 0800 1630 | 0800 1630 | DAY OFF |
| BANERJEE, ARUNDHUTI PHYS 80:84-84 1 | 1900 0700 | 1900 0700 | 1900 0700 | 1900 0700 LNAR LA | 1900 0700 LA | 1900 0700 LA | 1900 0700 LA | 1900 0700 LA | 1900 0700 | 1900 0700 FO 109 | 0700 1900 LS | 1900 0700 | 1900 0700 | 1900 0700 | 1900 0700 | 1900 0700 | 1900 0700 FO 109 | 1900 0700 FO 109 | 1900 0700 | 1900 0700 | 0700 1900 | 1900 0700 | DAY OFF | 1900 0700 | 0700 1900 FO 109 | 1900 0700 | DAY OFF | 0700 1900 |
| JOSEPH, ANGELA PHYS 0:80-80 1 | 0700 1900 | DAY OFF | DAY OFF | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 LH34 | 0700 1900 | DAY OFF | DAY OFF | 0700 1900 | DAY OFF | 0700 1900 | DAY OFF | DAY OFF | 0700 1900 | DAY OFF | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 |
| MEHTA, BHIKAM PHYS 80:84-72 1 | 1800 0800 FO 109 | 1900 0700 FO 109 | 1900 0700 FO 109 | 1900 0700 LA FO 109 | 1900 0700 LA FO 109 | 1900 0700 | 1900 0700 LNAR | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | 1800 0800 FO 109 | 1900 0700 FO 109 | 1900 0700 FO 109 | 1900 0700 FO 109 | DAY OFF | 1900 0700 LA FO 109 | 1900 0700 LA FO 109 | 1800 0800 FO 109 | DAY OFF | 1900 0700 FO 109 | 1900 0700 FO 109 | 1900 0700 FO 109 | DAY OFF | DAY OFF |
| PATTERSON, ALAN PHYS 80:84-84 1 | DAY OFF | 0700 1900 LNAR | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | DAY OFF | DAY OFF | DAY OFF | 0700 1900 | 0700 1900 LH34 | 0700 1900 | 0700 1900 | DAY OFF | 0700 1900 | DAY OFF | 0700 1900 LS | 0700 1900 | 0700 1900 | 0700 1900 LA FO 109 | 0700 1900 LA FO 109 | 0700 1900 | DAY OFF | DAY OFF | 1900 0700 | 1900 0700 | 1900 0700 FO 109 | 1900 0700 FO 109 |
| ABALO, TOMAS PHYS 8010-36 1 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | 0700 1900 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF |
| GLADKA, GALINA PHYS 0:106-47 1 | 1900 0700 | DAY OFF | DAY OFF | DAY OFF | 1900 0700 FO 109 | 1900 0700 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | 1900 0700 FO 109 | 0700 1900 FO 109 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | 0700 1900 FO 109 | DAY OFF | DAY OFF |
| HADDAD, NICHOLAS PHYS 0:0-0 1 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF |
| PARON, NICHOLAS PHYS 0:112-0 1 | DAY OFF | DAY OFF | 0700 1900 | 0700 1900 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF |
| MEHTA, SHALINI PHYS 0:23-23 1 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | : : | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF |
| CATAQUIZ, DORIS PHYS 0:24-30 1 | 1000 1900 FO 109 | DAY OFF | DAY OFF | 0800 1630 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | 1000 1800 FO 109 | DAY OFF | DAY OFF | 1000 1800 FO 109 | 1600 1900 0700 FO 109 | 1000 1800 FO 109 | 1000 1900 FO 109 | DAY OFF | DAY OFF | DAY OFF | 1000 1800 FO 109 | DAY OFF | 1000 1800 FO 109 | DAY OFF | DAY OFF | DAY OFF | 1000 1800 FO 109 | 1000 1800 FO 109 | 1000 1800 FO 109 | 1000 1800 FO 109 |
| LOO, DANTE PHYS 0:84-134 1 | 0700 1900 LS | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 1600 1900 0700 FO 109 | DAY OFF | 0700 1900 | 0700 1900 | 0700 1900 | 1900 0700 FO 109 | 0700 1900 | 0700 1900 FO 109 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 |

Alssa E. Lutz VA Medical Cen
Run 08-13-2018 16:19
AcuStaf (c) 2018

Sch Unit 111 HOSPITALIST
Posted Schedule Detail
07-22-2018 To 04-19-2018

| | PP215 Sun 22 | Mon 23 | Tue 24 | Wed 25 | Thu 26 | Fri 27 | Sat 28 | Sun 29 | Mon 30 | Tue 31 | Wed 1 | Thu 2 | Fri 3 | Sat 4 | PP216 Sun 5 | Mon 6 | Tue 7 | Wed 8 | Thu 9 | Fri 10 | Sat 11 | Sun 12 | Mon 13 | Tue 14 | Wed 15 | Thu 16 | Fri 17 | Sat 18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| VILLOSANTOS, MICHEL SECT 80:80-90 1 | DAY OFF | 0830 1700 | 0830 1700 | 0830 1700 LA | 0830 1700 LA | 0830 1700 LA | DAY OFF | DAY OFF | 0830 1700 LA | 0830 1700 | 0830 1700 | 0830 1700 | 0830 1700 | DAY OFF | DAY OFF | 0830 1700 LA | 0830 1700 LA | 0830 1700 LA | 0830 1700 LA | 0830 1700 | DAY OFF | DAY OFF | 0830 1700 | 0830 1700 | 0830 1700 | 0830 1700 | 0830 1700 LA | DAY OFF |
| LOMES, SALLY NP 80:80-80 1 | DAY OFF | 0800 1630 | 0800 1630 | 0800 1630 | 0800 1630 | 0800 1630 | DAY OFF | DAY OFF | 0800 1630 | 0800 1630 | 0800 1630 | 0800 1630 LHC | 0800 1630 | DAY OFF | DAY OFF | 0800 1630 | 0800 1630 | 0800 1630 | 0800 1630 | 0800 1630 | DAY OFF | DAY OFF | 0800 1630 | 0800 1630 | 0800 1630 | 0800 1630 | 0800 1630 | DAY OFF |
| BANERJEE, ARUNDHVATI PHYS 80:84-84 1 | DAY OFF | 1900 0700 | 1900 0700 | 1900 0700 | 1900 0700 | 1900 0700 LNAR | 1900 0700 | 1900 0700 LA | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | 1900 0700 LA | 1900 0700 LA | 1900 0700 | 1900 0700 | 1900 0700 | DAY OFF | DAY OFF | 1900 0700 | 1900 0700 | 1900 0700 | 1900 0700 | 1900 0700 | 0700 1900 |
| JOSEPH, ANGELA PHYS 0:80-80 1 | 0700 1900 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | 0700 1900 LA | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | DAY OFF | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 |
| MEHTA, MRIXNA PHYS 80:72-72 1 | 1900 0700 LNAR | 1900 0700 | 1900 0700 FO 109 | DAY OFF | 1900 0700 FO 109 | DAY OFF | 1900 0700 FO 109 | 1000 0800 FO 109 | DAY OFF | 1900 0700 FO 109 | 1900 0700 FO 109 | DAY OFF | DAY OFF | DAY OFF | 1800 0800 FO 109 | 1900 0700 FO 109 | 1900 0700 FO 109 | 1900 0700 FO 109 | 1900 0700 FO 109 | 1900 0700 FO 109 | 1900 0700 FO 109 | 1900 0700 FO 109 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF |
| PATTERSON, ALAN PHYS 80:84-84 1 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | DAY OFF | DAY OFF LA | 0700 1900 | 0700 1900 | 0700 1900 | DAY OFF | DAY OFF | DAY OFF | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | DAY OFF | DAY OFF | 0700 1900 | 0700 1900 |
| ABALO, TOMAS PHYS 80:30-0 1 | DAY OFF | DAY OFF | DAY OFF | 1300 2330 FO 109 | 1300 2330 FO 109 | 1300 2330 FO 109 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF |
| GLADKA, GALINA PHYS 0:84-96 1 | DAY OFF | 0800 1630 FO 109 | 0800 1630 FO 109 | 0800 1630 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | 1900 0700 | DAY OFF | 1900 0700 | 1900 0700 | 1900 0700 | 1900 0700 | 1900 0700 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | 1900 0700 | 1900 0700 | 1900 0700 | 1900 0700 | 1900 0700 | 1900 0700 |
| HADDAD, NICHOLAS PHYS 0:0-0 1 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF |
| PAXON, NICHOLAS PHYS 0:0-0 1 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF |
| MEHTA, SUALINI PHYS 0:31-21 1 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | 1600 2400 FO 109 | 1900 0700 FO 109 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | 1300 2400 FO 109 | 1300 2400 FO 109 |
| CATAQVIZ, DORIS PHYS 0:22-30 1 | 1000 1600 FO 109 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | 1000 1800 FO 109 | DAY OFF | DAY OFF | DAY OFF | 1000 1800 FO 109 | 1000 1800 FO 109 | 1000 1800 FO 109 | 1000 1800 FO 109 | 1000 1600 FO 109 | DAY OFF | DAY OFF | 1000 1600 FO 109 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | 1000 1800 FO 109 | 1000 1800 FO 109 | 1300 2400 FO 109 | DAY OFF |
| LXOJ, DANTE PHYS 0:02-102 1 | 0700 1900 | DAY OFF | DAY OFF | 0800 1630 FO 109 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 1900 0700 FO 109 | 1900 0700 FO 109 | 0700 1900 | 0700 1900 | 0900 2100 FO 109 | 0700 1900 | 1900 2100 FO 109 | 0700 1900 | 0700 1900 | 0700 1900 | 1900 0700 FO 109 | 0700 1900 FO 109 | 0700 1900 |
| BROOKS, GRAY PHYS 80:67-105 1 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | 1700 1900 FO 109 | 0700 1900 FO 109 | 1000 1600 FO 109 | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | DAY OFF | 0700 1900 | 0700 1900 1900 0700 FO 109 | 0700 1900 2100 FO 109 | 0700 1900 | 0700 1900 | 0700 1900 1900 FO 109 | 0700 1900 | 0700 1900 |

# EXHIBIT 4

June 27, 2016

De Los Santos, Michele <Michele.DeLosSantos@va.gov>

Thu 6/23/2016 2:37 PM

**To:** josep009@hotmail.com <josep009@hotmail.com>; Joseph, Angela <joseph009@hotmail.com>
**Cc:** Albito, Anthony L <Anthony.Albito@va.gov>

Dr. Joseph,
I am writing to advise you of an appointment you have scheduled with HR on Monday, June 27, 2016
at 8:00 a.m. in Dr. Albito's office (4th floor, Room 4200).
This is in regards to your upcoming full-time employment, and it is extremely important that you are
on time for this appointment so that HR can stay on schedule with any appointments they may have
after yours.

Thank you!

*Michele De Los Santos*
*Administrative Officer, Medical Service*
*Aleda E. Lutz VA Medical Center*
*1500 Weiss St.*
*Saginaw, MI 48602*
*(989) 497-2500, Ext. 11566*
*Fax: (989) 321-4923*

**JANUARY 10, 2014**

**VA HANDBOOK 5005/70
PART II
CHAPTER 3**

(b)  For an employee whose last tour of duty prior to November 1, 2013, is from 11:00 p.m., October 31, 2013 to 7:00 a.m., November 1, 2013, the probationary period is completed at midnight on October 31, 2013.

(c)  For an employee whose last tour of duty prior to November 1, 2013, (because of days off) is 4:30 p.m. on October 29, 2013, the probationary period is completed at 4:30 p.m. on October 29, 2013.

(d)  For an employee whose last tour of duty prior to November 1, 2013, is 4:30 p.m. on October 29, 2013, but he/she calls in sick for scheduled tours of duty on October 30 and October 31, 2013, the probationary period is completed at 4:30 p.m. on October 31, 2013.

(e)  If completed satisfactorily, the employee will automatically complete the required probationary period at the end of the last tour of duty worked or scheduled to work.

d.  **Creditable Service.**  The following service is creditable toward completion of the probationary period:

(1)  Continuous service in an appointment under 38 U.S.C. 7401(1), 7306, or part time or intermittent (including temporary) service for RNs appointed under 38 U.S.C. 7405(a)(1).

(2)  Prior satisfactory probationary service of at least 6 months duration followed by a break(s) in service totaling 1 year or less if the break was not due to separation for cause.  A break in service is defined for the purpose of this subparagraph as a period during which no service is rendered under 38 U.S.C. 7306, 7401(1), or 7405(a)(1) for part time or intermittent RNs.

(3)  Time spent in a probationary period served under 38 U.S.C. 7403(b) prior to holding some other type of appointment in VHA, if the employee is subsequently appointed under 38 U.S.C. 7401(1), provided all other conditions of subparagraph d are met.  Example:  A full time RN appointed under 38 U.S.C. 7401(1) in July 2011 accepts a position of Supervisory Health System Specialist (Domiciliary Administrator) under title 5 in December 2012.  The individual returns to an RN position under 38 U.S.C. 7401(1) in October 2014.  The previous time served as an RN from July 2011 through December 2012 is not creditable towards the completion of the probationary period, because the time served under the title 5 appointment was longer than one year.

(4)  All leave with pay during creditable service.

(5)  Leave without pay during the probationary period is considered creditable service when it does not exceed a total of 40 calendar days for physicians, dentists, podiatrists, optometrists, or chiropractors, or 235 hours for RNs, nurse anesthetists, physician assistants, and expanded-function dental auxiliaries and 110 hours for part time RNs.  **NOTE:**  *When determining this total, each hour of leave without pay taken by an RN or nurse anesthetist on the Baylor Plan is to be multiplied by 1.667.*

(6)  Time before restoration during which a probationary employee received work injury compensation from the Office of Workers' Compensation Programs.

# Pharmacy Training - Dr. Joseph

### De Los Santos, Michele <Michele.DeLosSantos@va.gov>

Mon 5/23/2016 12:16 PM

To: Joseph, Angela <joseph009@hotmail.com>; josep009@hotmail.com <josep009@hotmail.com>; Dawkins-Kennedy, Tracy <Tracy.Dawkins-Kennedy@va.gov>;

**Emailing: Hospitalist Schedule Calendar January 2016**

Lewis, Sally A. <Sally.Lewis@va.gov>
Thu 12/31/2015 3:16 PM
**To:** josep009@hotmail.com <josep009@hotmail.com>
**Cc:** Clutter, Justin D. <Justin.Clutter@va.gov>

1 attachments (834 KB)
Hospitalist Schedule Calendar January 2016.ics;

<<Hospitalist Schedule Calendar January 2016.ics>>
Your message is ready to be sent with the following file or link
attachments:

Hospitalist Schedule Calendar January 2016


Note: To protect against computer viruses, e-mail programs may prevent
sending or receiving certain types of file attachments.  Check your
e-mail security settings to determine how attachments are handled.

Urgent care calendar is forthcoming on Monday.
My plan will be to mesh these two and use you up to full time between
the two places.
Thank you!

Happy new year!

Aleda E. Lutz VA Medical Center - Aleda E. Lutz VA Medical Center - Reports

Page 1 of 1

Aleda E. Lutz VA Medical Cen
Run 02-12-2016 15:52
AcuStaf (c) 2016

Sch Unit 111 HOSPITALIST, Dir/Ind Hr Labels
Posted Schedule Detail
02-21-2016 To 03-05-2016

Report 47
Page 1

| | PP 5 Sun 21 | Mon 22 | Tue 23 | Wed 24 | Thu 25 | Fri 26 | Sat 27 | Sun 28 | Mon 29 | Tue 1 | Wed 2 | Thu 3 | Fri 4 | Sat 5 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BANERJEE, ARUNDHUTI PHYS 80:84-0 1 | 0700 1900 | | | | | | | | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 |
| MEHTA, BHIKAM PHYS 80:72-0 1 | 1900 0700 | | 1900 0700 | | 1900 0700 | | 1900 0700 | 1900 0700 | | 1900 0700 | | | | |
| PATTERSON, ALAN PHYS 80:84-0 1 | | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | 0700 1900 | | | | | | |
| BATES, SUMMER NP 80:80-0 1 | | 0800 1630 | 0800 1630 | 0800 1630 | 0800 1630 | 0800 1630 | | | 0800 1630 | 0800 1630 | 0800 1630 | 0800 1630 | 0800 1630 | |
| BONNER, MICHAEL NP 80:72-0 1 | | 0800 1630 | 1300 1630 | 0800 1630 | 0800 1630 | 0800 1630 | | | 0800 1630 | 0800 1630 | 0800 1300 | 0800 1630 | 0800 1630 | |
| ABALO, TOMAS PHYS 80:48-0 1 | | 1900 0700 | | 1900 0700 | | 1900 0700 | | | 1900 0700 | | | | | |
| JOSEPH, ANGELA PHYS 0:72-0 1 | | | 0700 1900 | 0700 1900 | | 0700 1900 | | | | 0700 1900 | 0700 1900 | | 0700 1900 | |
| LEBLANC, HERVE PHYS 0:36-0 1 | | 0700 1900 FO 109 | 0700 1900 FO 109 | 0700 1900 FO 109 | | | | | | | | | | |
| BAKARI, RASHAD PHYS 0:12-0 1 | | | | | | | | | 1000 2200 FO 109 | | | | | |
| PERZHINSKY, JULIETT PHYS 0:6-0 1 | | | | | | | | | | | | 1200 1730 FO 109 | | |
| * Float Ins * | | | | | | | | | | | | | | |
| CARNAHAN, KEVIN PHYS 80:80-0 1 | | 0700 1730 FI 109 | 0700 1730 FI 109 | 0700 1730 FI 109 | 0700 1730 FI 109 | | | | 0700 1730 FI 109 | 0700 1730 FI 109 | 0700 1730 FI 109 | 0700 1730 FI 109 | | |

11538

# EXHIBIT 5

**Department of Veterans Affairs**
**Washington, DC 20420**

**VA DIRECTIVE 5979**
**Transmittal Sheet**
**December 8, 2020**

## HARASSMENT PREVENTION POLICY

1. **REASON FOR ISSUE:** This directive establishes the Department of Veterans Affairs (VA) harassment prevention policy. It outlines roles and responsibilities to help VA maintain a workplace free from harassment.

2. **SUMMARY OF CONTENTS/MAJOR CHANGES:** "Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors," June 18, 1999, Equal Employment Opportunity Commission (EEOC), requires Federal agencies to establish anti-harassment procedures that cover all protected bases of discrimination. This directive reflects longstanding policy at the Department of Veterans Affairs (VA) for maintaining a model workplace free from harassment and other forms of discrimination. The VA further prohibits employees from engaging in harassing conduct for *any* reason regardless of whether the conduct is related to one of the Federally protected bases. The electronic version of this directive is maintained on the VA Publications website.

3. **RESPONSIBLE OFFICE:** The Office of Resolution Management, Diversity and Inclusion (ORMDI).

4. **RELATED HANDBOOK/DIRECTIVE:** VA Handbook 5979, Harassment Prevention Program Procedures (not yet published).

5. **RESCISSION:** None.

**CERTIFIED BY:**

**BY DIRECTION OF THE SECRETARY OF VETERANS AFFAIRS:**

/s/
Karen L. Brazell
Principal Executive Director, Office of
Acquisition, Logistics and Construction
and Chief Acquisition Officer, Performing
the Delegable Duties of the Assistant
Secretary for Enterprise Integration

/s/
Daniel R. Sitterly
Assistant Secretary for
Human Resources and Administration/
Operations, Security and Preparedness

**DISTRIBUTION:** Electronic only

VA Directive 5979                                                December 8, 2020

## HARASSMENT PREVENTION POLICY

1. **PURPOSE**. This directive establishes the Department of Veterans Affairs (VA) harassment prevention policy.

2. **POLICY**. It is policy at VA to maintain a work environment free from harassment. Harassing conduct will not be tolerated. This policy requires immediate and appropriate action to be taken by management when notified of hostile conduct that is, or has the potential to become, severe or pervasive to the point that it constitutes a legal claim of sexual or non-sexual harassment.

    a. EEOC defines harassment as any unwelcome verbal or physical conduct based upon race, color, religion, sex (including gender identity, transgender status, sexual orientation, and pregnancy), national origin, age, disability, genetic information, parental status or retaliation for opposing discriminatory practices or participating in the discrimination complaint process, when:

        (1) The behavior can reasonably be considered to adversely affect the work environment, or,

        (2) An employment decision affecting the employee is based upon the employee's acceptance or rejection of such conduct.

    b. Sexual harassment involves unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when submission to or rejection of such conduct is made explicitly or implicitly a term or condition of one's employment or is used as a basis for career or employment decisions affecting that person; or such conduct interferes with an individual's performance or creates an intimidating, hostile or offensive work environment.

    c. VA further prohibits employees from engaging in harassing conduct for any reason regardless of whether the conduct was related to one of the legally protected bases identified above in paragraph 2.a.

    d. Additionally, it is important to understand the distinction between harassment and legitimate management actions. For example, management is required to provide performance feedback to employees regarding time and attendance, conduct, and work performance. Negative feedback or action from management can be unpleasant for the employee, but negative feedback or delivery of same may not rise to the level of harassment. Harassment does not involve whistleblower retaliation. Examples of harassment include but not limited to offensive jokes, slurs, threats, offensive objects or pictures and intimidation.

    e. Harassment allegations may be reported to the immediate supervisor; another management official if the alleged harasser is the immediate supervisor; the local Harassment Prevention Coordinator (HPC); or the VA Harassment Prevention Program (HPP) Office at 1-888-566-3982.

2

VA Directive 5979                                                       December 8, 2020

    f.  VA will not tolerate retaliation against any individual for reporting harassing conduct under this or any other policy or procedure, or for assisting in any inquiry about such a report.

## 3.  RESPONSIBILITIES.

    a.  **Assistant Secretary for Human Resources and Administration/Office of Security and Preparedness (AS HRA/OSP)** shall provide oversight and support to the HPP, ensuring a harassment-free environment is established  and maintained in the VA

    b.  **Under Secretaries, Assistant Secretaries, and Other Key Officials** shall perform following functions as outlined in VA Handbook 5979: (not yet published)

        (1) Ensure all employees are aware the policy is posted on the VA Publication Website and produce locally for employees who do not have access to email.

        (2) Coordinate with the ORMDI HPP office to ensure that all employees receive harassment prevention training provided by the ORMDI HPP  office.

        (3) Appoint an HPC point of contact to coordinate with the ORMDI HPP office on all reports of harassment at the facility and staff office level.

        (4) Coordinate with the ORMDI HPP office to ensure that the HPC receives all HPC training within 30 -45 days of appointment.

        (5) Ensure that an investigation into harassment allegations is completed within 30 business days of receipt of the allegation.

        (6) Appoint individual(s) as determined through coordination with the HPP Program Manager (PM), to serve on a pool of neutral factfinders. The factfinders will receive training and remain available to conduct-fact-findings to the extent necessary.

    c.  **Deputy Assistant Secretary/Office of Resolution Management, Diversity and Inclusion (DAS ORMDI)** shall:

        (1) Provide executive leadership, general oversight and support to the HPP and ensure that its functions remain separate and distinct from Equal Employment Opportunity (EEO) complaint processing functions.

        (2) Designate an ORMDI HPP Program Manager.

        (3) Develop and oversee VA-wide policy for processing harassment allegations.

        (4) Provide an electronic case management system and a call center to receive harassment allegations from VA employees and managers.

VA Directive 5979                                          December 8, 2020

(5) Serve as the advisor to the AS/HRA/OSP on harassment matters.

d. **The ORMDI HPP Program Manager** shall:

(1) Develop and oversee VA-wide policy for processing allegations of harassment in the ORMDI HPP office.

(2) Establish HPP assessment guidelines for reviewing and documenting compliance with applicable laws, regulations and directives regarding allegations of harassment for facility and staff offices. Conduct a minimum of 10 compliance reviews per fiscal year.

(3) Ensure that policies and procedures for processing allegations of harassment are developed, distributed and maintained in accordance with applicable laws and regulations.

(4) Advise and assist the DAS/ORMDI and other key officials on matters relating to the HPP processes.

(5) Provide the DAS/ORMDI with Administration and Staff Office performance reports, evaluations and trend data regarding HPP compliance with applicable laws and regulations.

(6) Track, monitor and report the quantity and quality of VA's harassment prevention activities uploaded into the Harassment Prevention Program Intake System (HPPIS).

(7) Coordinate Department-wide training on how to prevent harassment in the workplace and procedures for reporting and addressing harassment in accordance with applicable EEOC regulations.

(8) Ensure that all allegations of harassment are processed in accordance with applicable laws, regulations, directives and the HPP Handbook.

(9) Work with VA management officials to raise awareness on their responsibilities in the Harassment Prevention arena.

(10) Ensure that all employees receive the appropriate level of training required by EEOC directives and that sufficient resources are allocated to achieve organizational objectives.

(11) Review and approve all existing VA and Administration policies and information documents to make sure they are current, complete, and aligned with VA's Sexual Harassment Policy.

e. **ORMDI HPP Program Specialist** shall:

(1) Serve as HPP subject matter experts (SMEs) providing program guidance and education to customers and stakeholders.

4

(2) Upload, review, and monitor reports of harassment in the HPPIS.

(3) Notify Administration, Staff Office and facility Directors upon receipt of reports of harassment and when offices fail to respond within 30 business days.

(4) Timely monitor and track case assignments to include following up with allegers to ensure their allegations are handled in accordance with the HPP procedures.

(5) Coordinate with management and the HPCs to ensure that all allegations of harassment are addressed in accordance with EEOC regulations.

(6) Work closely with management to monitor compliance on corrective actions taken.

(7) Develop uniform training programs and collaborate with other VA organizations in the delivery of training for managers and employees in areas that often lead to HPP and EEO complaints.

(8) Identify internal and external training programs to address training needs.

(9) Conduct a compliance review at facilities and/or Staff Offices.

f.  **VA Harassment Prevention Coordinator** shall:

(1) Serve in a collateral role as a coordinator for harassment allegations received in their respective Administrations and/or Staff Offices.

(2) Coordinate with the HPP Program Specialist to ensure management is aware and timely addresses all allegations assigned to them throughout the process.

(3) Review, update and input all required information and records in the HPPIS related to reports of harassment.

(4) Serve as a point of contact for staff to report allegations of harassment. Upon receipt of a report of harassment, HPC will notify management and educate the alleger on the next steps in the process staff on the HPP process.

(5) Coordinate with the ORMDI HPP office on providing HPP awareness training to the workforce.

g.  **VA Administration and Staff Office Managers/Supervisors** shall perform following functions as outlined in VA Handbook 5979:(not yet published)

(1) Work to prevent harassment in the workplace.

VA Directive 5979                                                    December 8, 2020

(2) Ensure that their subordinates are aware of this directive and associated handbook VA Handbook 5979 (not yet published) and its requirements.

(3) Ensure that all employees receive harassment prevention training.

(4) Immediately begin to address (within five business days) any incident of inappropriate and harassing behavior (e.g., separate the alleged perpetrator of sexual harassment from the employee alleging harassment; begin an inquiry, factfinding, mediation, administrative investigation, to the extent possible). Allegations involving senior leaders, as defined in VA Directive 0500, must be reported to Office of Accountability and Whistleblower Protection (OAWP). OAWP may investigate these allegations. Notify the ORMDI HPP office that the case was reported to OAWP. For more information about OAWP, visit www.va.gov/accountability.

(5) Ensure allegations of inappropriate and harassing behavior are kept confidential, to the extent permitted by law.

(6) Submit a copy of the completed factfinding, inquiry, administrative investigation and/or outcome to the HPP and/or HPC within 30 business days of the receipt of the report of harassment. A template will be provided in Handbook 5979, not yet published.

(7) Within three (3) business days of the outcome, follow up with the employee who reported the harassing behavior.

(8) Take prompt and appropriate corrective and disciplinary action against personnel who have engaged in harassing conduct or who have not carried out their responsibilities under this policy.

(9) Within three (3) business days, notify the ORMDI HPP office of the corrective action or any other measures taken to address the substantiated allegations.

(10) Notify the ORMDI HPP office, within two (2) business days, of all reports of harassment (one (1) business day for sexual harassment), reported directly to the facility or staff office and not to the HPP Agency Office. Submit documentation outlining efforts to address issues and the outcome.

(11) Participate and support the HPP Compliance Review Program, conducted at facilities or staff offices. Provide a corrective action plan within thirty (30) business days of receipt of the HPP Compliance Review Program Final Report.

h. **General Counsel** In addition to the responsibilities in Para 3 b above, shall provide expert legal advice and guidance relevant to harassment prevention responsibilities and assist in legal issues that arise during HPP inquiries.

i. **Assistant Secretary for Accountability and Whistleblower Protection** In

VA Directive 5979                                    December 8, 2020

addition to the responsibilities in Para 3 b above, shall:

    (1) Receive allegations of harassment against senior leaders as defined in VA Directive 0500.

**j.  Administration and Staff Office Human Resource Offices (HR)** shall:

    (1) Receive biannual HPP training specific to their roles in TMS, as provided by ORMDI.

    (2) Provide guidance and advice to employees and management to address harassment allegations.

**k.  Employee Relations/Labor Relations (ER/LR) Supervisor** shall:

    (1) Provide guidance and advice to management to address harassment allegations when a complaint of harassment has been received from the ORMDI HPP office.

    (2) Provide guidance and advice to management when corrective action is required in response to harassment allegations.

    (3) Provide confirmation to the ORMDI HPP office within three business days that corrective action has been taken when it has been determined that inappropriate behavior has occurred.

**l.  It is VA policy that all VA Employees** shall:

    (1) Act professionally and refrain from inappropriate and harassing conduct.

    (2) Immediately report inappropriate and harassing behavior to a management official, HPC and/or the ORMDI HPP office, if subjected to unwelcome hostile or abusive conduct.

    (3) Immediately report inappropriate and harassing behavior to a management official, HPC and/or the ORMDI HPP office, if as a bystander, harassing behavior is witnessed.

    (4) Fully cooperate in an inquiry or fact-finding of a harassment allegation.

## 4.  REFERENCES.

a.  Title VII of The Civil Rights Act of 1964, as amended, 42 United States Code (U.S.C.) §2000e-16.

b.  Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §633a.

c.  Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. §12101 et seq.

d.  Rehabilitation Act of 1973, as amended, 29 U.S.C. §791(g).

VA Directive 5979                                      December 8, 2020

   e.  Civil Service Reform Act of 1978, 5 U.S.C. §2302(b) (10).

   f.  Genetic Information Nondiscrimination Act of 2008, (GINA), 42 U.S.C. §2000ff-1(b).

   g.  The Pregnancy Discrimination Act of 1978, P.L. Number 95-955.

   h.  Executive Order 11478, as amended, prohibiting discrimination based on sexual orientation, May 28, 1998.

   i.  Executive Order 13152 prohibiting discrimination based on parental status, May 2000.

   j.  EEOC Management Directive 715, December 3, 2019.

   k.  EEOC Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors, June 18, 1999.

   l.  EEOC Management Directive 110, as revised, August 5, 2015.

   m.  VA Secretary Equal Employment Opportunity, Diversity and Inclusion, No FEAR and Whistleblower Rights and Protection Policy Statement, December 19, 2019.

   n.  VA Secretary Memo regarding the establishment of the Anti-Harassment Office/HPP, February 12, 2015.

   o.  VA Handbook 0500, Investigation of Whistleblower Disclosures and Allegations Involving Senior Leaders or Whistleblower Retaliation

   p.  Equal Employment Opportunity Commission (EEOC)

VA Directive 5979                                                    December 8, 2020

**APPENDIX A**

**GUIDELINES TO REPORT HARASSING CONDUCT**

## 1. <u>REPORTING HARASSMENT</u>

Harassment by or against VA employees, applicants, contract employees, clients/patients, customers or anyone doing business with VA is strictly prohibited. Any individual who has been subjected to and/or witnessed unwelcome conduct is encouraged to inform the person(s) responsible for the conduct that it is unwelcome and offensive. If the conduct continues or the individual is uncomfortable confronting the responsible person(s) about the conduct, he or she must immediately report the matter to the following:

   a.  Their immediate supervisor.

   b.  Another supervisor or other management official, if the supervisor is the alleged harasser.

   c.  The HPC. For a list of HPCs, visit www.va.gov/ORM/HPP.asp.

   d.  The ORMDI HPP office at 1-888-566-3982.

In addition to understanding what harassment is, it is also important to understand what it is not. Harassment should be distinguished from management's legitimate efforts to supervise employee. For example, management is required to provide feedback to employees regarding time and attendance, conduct, and work performance. Negative feedback or action from management on these topics could be unpleasant for the employee but may not rise to the level of harassment. Harassment does not involve whistleblower retaliation.

All information pertaining to a harassment claim must be maintained on a confidential basis. The maintenance of records and any disclosure of information from these records must be in complete compliance with the Privacy Act, Title 5 U.S.C. 552a. Such information can be disclosed on a "need to know" basis.

VA will not tolerate retaliation against any individual for reporting harassing conduct under this or any other policy or procedure, or for assisting in any inquiry about such a report)

## 2. <u>INQUIRY INTO ALLEGATIONS OF HARASSING CONDUCT</u>

A supervisor or manager who receives an allegation or witnesses harassing conduct must:

   a.  Immediately assess the situation and consult with the HPC and/or Human Resources Management ER/LR staff to determine what type of inquiry will occur.

VA Directive 5979                                                December 8, 2020

> Note: Harassment allegations involving senior leaders, as defined in VA Directive 0500, must be reported to OAWP. OAWP may investigate these allegations. For more information about OAWP, visit www.va.gov/accountability.

b. Notify the alleger that his/her report of harassment has been received and an inquiry into the allegations will be conducted.

c. Designate a factfinder immediately when it is determined that an informal fact-finding is necessary. See the above note about harassment allegations involving senior leaders. Managers and supervisors dealing with allegations of inappropriate and harassing conduct should avail themselves of the expertise of the HPP Specialist, HPC and/or HR Specialists throughout this process. This expertise is critical when selecting the person who will serve as the factfinder.

NOTE: REPORTS OF SEXUAL HARASSMENT:

When sexual harassment reports are received directly by the HPC or the supervisor, the HPC and supervisors are required to report the matter to the ORMDI HPP office within one (1) business day for monitoring and tracking. The report must be in writing and must include a brief description of the alleged harassing conduct, name of the alleger and accused, and preliminary steps taken, in response to the allegation. For a sample harassment complaint form to be used by the supervisor and the HPC visit www.va.gov/ORM/HPP.asp.

d. In consultation with subject-matter experts, make the ultimate determination as to whether the conduct violated the policy and, if so, what type of corrective action is warranted. Any employee, supervisor or manager who is found to have violated the harassment prevention policy or procedures may be subjected to disciplinary action.

e. The supervisor and/or designee will notify the employee who reported the harassment of the completion and outcome of the process.

The ORMDI HPP office will:

a. Monitor and track reports of harassment to ensure allegations were addressed by management.

b. Follows up with employees to ensure that management notified them:
   - of the outcome
   - that the situation was resolved
   - that any concerns about the process are addressed

c. Review all outcomes for appropriateness and timeliness.

d. Follow up with the appropriate management official to ensure that action is taken in accordance with the VA Handbook 5979 (not yet published).

VA Directive 5979                                            December 8, 2020

Note: Reporting allegations of harassment in the Harassment Prevention arena does not preclude an individual from filing an EEO complaint. The EEO and HPP are separate programs. To file an allege harassment complaint in the EEO arena, the individual must contact an ORMDI EEO Counselor within 45 calendar days of the date of the alleged discrimination. For additional information, visit the ORMDI website at http://www.va.gov/ORM/HPP.asp.

# EXHIBIT 6

FEBRUARY 5, 2015 VA DIRECTIVE 5021/17 APPENDIX A A-2a

l. Suspension. The involuntary placement of an employee, for disciplinary reasons, in a non-duty, non-pay status for a temporary period of time. m. Transfer. The involuntary movement of an employee from one VA facility to another (under separate managerial authority) based on conduct or performance and without a break in service. (Authority: 38 U.S.C. 501(a), 7421.)

4. RESPONSIBILITIES AND AUTHORITIES. The Under Secretary for Health or designee will appoint Disciplinary Appeals Boards to hear appeals of major adverse actions and will review and take appropriate action on all decisions rendered by Disciplinary Appeals Boards. (Authority: 38 U.S.C. 501(a), 7421, 7461, 7462, and 7464.) 5. DISCIPLINARY ACTIONS a. Types of Disciplinary Actions. This paragraph applies to adverse actions, other than major adverse actions, which include admonishment and reprimand based on conduct or performance (refer to paragraph 3 of this section for definitions). b. Procedural Entitlements (1) Prior to taking disciplinary action, employees must be given:

APRIL 15, 2002 VA DIRECTIVE 5021 APPENDIX A A-3

(a) Advance written notice of the action proposed. The advance notice of proposed action must contain the following information:

1. The nature of the action proposed (e.g., admonishment); 2. A statement of the specific charges upon which the proposed action is based, including names, dates, places, and other data sufficient to enable the employee to fully understand the charges and to respond to them; 3. A statement of any specific law, regulation, policy, procedure, practice or other specific instruction (national, local or otherwise) that has been violated as it pertains to the charge(s), if applicable; (b) The right to reply orally or in writing, or both orally and in writing, and to submit affidavits

and other documentary evidence in support of the reply; (c) The right to a reasonable amount of time to submit the reply or replies (time limits may vary according to the circumstances but in no event should be less than five calendar days); (d) The right to review the material relied upon to support the reasons for the proposed action; (e) Identification of the official who will receive any oral and/or written replies; (2) The right to a written decision as soon as possible after the employee's reply has been fully considered or after the expiration of the time allowed for reply, if the employee does not reply; (3) The right to be represented by an attorney or other representative of the employee's choice at all stages of the case; and (4) The right to grieve the disciplinary action, if any.

c. Employee's Reply (1) If the employee requests an opportunity to reply orally, the decision official or designee will receive the employee's reply. Any official designated to receive the reply must have the authority to recommend what final decision should be made. (2) A written summary signed by the official hearing the oral reply must be made part of the record.

d. Arriving at a Final Decision (1) The decision official will give full and impartial consideration to the employee's reply, if any; the recommendation of the designee hearing an oral reply, if any oral reply was made; and all evidence of record. If the decision official finds one or more of the charges in the advance notice sustained, he or she will determine an appropriate action

VA DIRECTIVE 5021 APRIL 15, 2002 APPENDIX A A-4 (2)

A decision adverse to the employee must be based only on the charges stated in the notice of proposed action. If none of the charges are sustained, either in whole or in part, no action may be imposed, regardless of any record of past discipline cited in the notice.

(3) The penalty may not be more severe than that proposed in the notice of proposed action.

(4) If the notice of proposed action is determined to be procedurally defective to the detriment of the employee's substantive rights, or if it is found that additional reasons other than those set forth should be considered, or that the appropriate action should be more severe than that proposed, the notice of proposed action will be rescinded and a new notice of proposed action issued.

(5) If it is determined that the appropriate action is a major adverse action, the procedures outlined in paragraph 6 of this section will apply. e. Decision. The decision will be in writing and will contain the following information: (1) A statement of whether any of the charges sustained arose out of a question of professional conduct or competence. (2) A statement that consideration has been given to all evidence developed, including the employee's reply(ies). (3) A statement of the decision official's determination regarding which charges, if any, in the advance notice were sustained, and which charges, if any, were not sustained. (4) If a record of prior disciplinary actions was cited in the advance notice, the decision will indicate how the past record, as cited in the advance notice, was taken into consideration in determining the proper action. (Prior disciplinary actions which have expired or have been withdrawn may not be cited as a basis for a future action.) (5) A statement concerning the employee's rights to file a grievance, and the time limit within which it must be filed.

FEBRUARY 5, 2015 VA DIRECTIVE 5021/17 APPENDIX A A-2a

l. Suspension. The involuntary placement of an employee, for disciplinary reasons, in a non-duty, non-pay status for a temporary period of time. m. Transfer. The involuntary movement of an employee from one VA facility to another (under separate managerial authority) based on conduct or performance and without a break in service. (Authority: 38 U.S.C. 501(a), 7421.)

4. RESPONSIBILITIES AND AUTHORITIES. The Under Secretary for Health or designee will appoint Disciplinary Appeals Boards to hear appeals of major adverse actions and will review and take appropriate action on all decisions rendered by Disciplinary Appeals Boards. (Authority: 38 U.S.C. 501(a), 7421, 7461, 7462, and 7464.) 5. DISCIPLINARY ACTIONS a. Types of Disciplinary Actions. This paragraph applies to adverse actions, other than major adverse actions, which include admonishment and reprimand based on conduct or performance (refer to paragraph 3 of this section for definitions). b. Procedural Entitlements (1) Prior to taking disciplinary action, employees must be given:

APRIL 15, 2002 VA DIRECTIVE 5021 APPENDIX A A-3

(a) Advance written notice of the action proposed. The advance notice of proposed action must contain the following information:

1. The nature of the action proposed (e.g., admonishment); 2. A statement of the specific charges upon which the proposed action is based, including names, dates, places, and other data sufficient to enable the employee to fully understand the charges and to respond to them; 3. A statement of any specific law, regulation, policy, procedure, practice or other specific instruction (national, local or otherwise) that has been violated as it pertains to the charge(s), if applicable; (b) The right to reply orally or in writing, or both orally and in writing, and to submit affidavits

and other documentary evidence in support of the reply; (c) The right to a reasonable amount of time to submit the reply or replies (time limits may vary according to the circumstances but in no event should be less than five calendar days); (d) The right to review the material relied upon to support the reasons for the proposed action; (e) Identification of the official who will receive any oral and/or written replies; (2) The right to a written decision as soon as possible after the employee's reply has been fully considered or after the expiration of the time allowed for reply, if the employee does not reply; (3) The right to be represented by an attorney or other representative of the employee's choice at all stages of the case; and (4) The right to grieve the disciplinary action, if any.

c. Employee's Reply (1) If the employee requests an opportunity to reply orally, the decision official or designee will receive the employee's reply. Any official designated to receive the reply must have the authority to recommend what final decision should be made. (2) A written summary signed by the official hearing the oral reply must be made part of the record.

d. Arriving at a Final Decision (1) The decision official will give full and impartial consideration to the employee's reply, if any; the recommendation of the designee hearing an oral reply, if any oral reply was made; and all evidence of record. If the decision official finds one or more of the charges in the advance notice sustained, he or she will determine an appropriate action

VA DIRECTIVE 5021/17 FEBRUARY 5, 2015 APPENDIX A A-1a e. Grade. The established grades for the positions covered by this chapter will be as defined by 38 U.S.C. 7404, and the qualification standards issued pursuant to 38 U.S.C. 7402. (See part II of VA Handbook 5005, Staffing.)

f. Major Adverse Actions. These are suspension, transfer, reduction in grade, reduction in basic pay, and discharge based on conduct or performance. For purposes of this Directive, a reduction in basic pay includes a reduction in the market pay of a physician or dentist as a result of an involuntary reassignment or change in assignment taken for disciplinary reasons, i.e. conduct or performance reasons.

# EXHIBIT 7

DECEMBER 28, 2017 VA HANDBOOK 5021/25 PART II APPENDIX A II-A-1 APPENDIX A. TITLE 38 – TABLE OF PENALTIES 1. INSTRUCTIONS FOR USE OF TABLE

a.  General. This appendix will be used as a guide in the administration of disciplinary and major adverse actions to help ensure that like actions are taken for like offenses. The table is designed to be sufficiently broad to include most types of offenses, but is not intended to be an exhaustive listing of all offenses. For other offenses, appropriate penalties may be prescribed by decision officials for application within their jurisdiction, consistent with the range of penalties for comparable offenses listed in the table. Disciplinary penalties will generally fall between the ranges indicated in the guide, but in unusual circumstances greater or lesser penalties may be imposed.

b.  [The following] mitigating and aggravating factors [will] be considered [ ] [in determining the appropriate penalty.]

c.  [Each relevant factor must be addressed.] (1) The mitigating and aggravating factors for Title 38 employees are as follows: (a) The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities. Facts to be considered may include:

d.  1. Was the offense intentional or a result of negligence?

e.  2. Was the offense important, meaningful, or considerable?

f.  3. Was the offense committed maliciously or for gain?

g.  4. Did the offense result in serious injury or death?

h.  5. Was the offense repeated?

i.  (b) The employee's job level and type of employment.

j. Facts to be considered may include: 1. Does the employee have frequent contact with patients or the public? 2. Is the employee a supervisor or manager? 3. How prominent is the employee's position? What makes it a prominent position? (c) The employee's past disciplinary record. (d) The employee's work record. Facts to be considered may include: 1. What is the employee's length of VA service, length of overall total federal service (including military), and length of service in the position/role currently occupied? 2. What was the employee's performance on the job before the offense? 3. What is the employee's performance on the job since the offense? 4. Is the employee dependable? (e) Management's confidence in the employee's ability to successfully perform and behave in the future. Facts to be considered may include: 1. Did the offense involve a breach of integrity or character flaw that significantly impacts management's confidence?

VVA HANDBOOK 5021/25 DECEMBER 28, 2017 PART II APPENDIX A [II-A-1a] 2. Can the employee's supervisor rely on the employee to successfully perform in the future? 3. Can the employee's supervisor rely on the employee to refrain from misconduct in the future? (f) Consistency of the penalty. Facts to be considered may include: 1. Using the Table of Penalties as a guideline only, is the penalty within the range for similar offenses as outlined in the Table? 2. What penalty was imposed on other employee(s), for the same or similar offenses, in the same organizational work unit doing similar work? (g) The impact of the offense upon the reputation of the agency. Facts to be considered may include: 1. What is the notoriety or the potential notoriety of the offense outside the VA, e.g. media, Congress? 2. How and to what extent does the offense violate the agency's core values? 3. Has the offense impacted the veterans' or public's trust in the agency? (h) The degree to which the employee either knew or should have

known that the conduct in question was improper or that the standard of care was not met. Facts to be considered may include: 1. Are there any laws, regulations, directives or agency policies addressing the offense? 2. Was the employee trained or informed about the laws, regulations, directives or agency policies addressing the offense? 3. Would a reasonable person know that the offense was wrong without any special training? 4. Is it contrary to commonly accepted clinical practices? (i) The potential for the employee's rehabilitation. Facts to be considered may include: 1. Has the employee accepted responsibility for the offense? 2. Has the employee shown remorse for the offense? 3. Has the employee taken any action to give the agency a reasonable belief that the offense will not recur? 4. Is there training or assistance available to prevent recurrence? (j) Any mitigating circumstances surrounding the offense. Facts to be considered may include: 1. Were there any unusual job tension, personality problems, harassment, or other workplace stressors in the employee's work unit? 2. Was the employee provoked by others? 3. Was management made aware of any workplace stressors or provocations? If yes, what was management's response?

VA HANDBOOK 5021/25 DECEMBER 28, 2017 PART II APPENDIX A [II-A-1b] (k) The adequacy and effectiveness of alternative sanctions to deter such conduct in the future. Facts to be considered may include: 1. Were other sanctions considered before determining that this penalty was appropriate?] b. Application of Table (1) Progressive Discipline. Offenses need not be identical in order to support progressively more severe adverse action against an employee. For example, an employee who has received an admonishment for being absent without leave (AWOL) can receive a reprimand for sleeping on duty, and possibly be suspended or discharged for a third offense unrelated to the two previous infractions. (2) Combination of Offenses. When

an employee has committed a combination or series of offenses, a greater penalty than is listed for a single offense may be appropriate. (3) This guide does not cover all offenses for which adverse penalties are expressly provided by law or Civil Service regulation. A further listing of penalties prescribed by statute, regulation, or Executive Order is contained in 5 CFR, part 735. (4) Where appropriate, alternate penalties may be used in place of discharge as provided in this chapter, except as noted for the offense described in item 28 of the table. Alternate penalties include reduction in grade, reduction in basic pay, and transfer. (5) Discharge action will be taken whenever required by law or regulation or whenever warranted by the facts in the individual case. Usually progressively more severe penalties will be administered before discharge action is initiated, unless the offense is so serious that it warrants discharge action. NOTE: Although oral or written counselings of employees are not considered disciplinary actions, such counselings may be considered when assessing the appropriate penalty for a particular offense. 2. RANGE OF PENALTIES FOR STATED OFFENSES NOTE: ['Days' specified in this table refer to calendar days for suspension actions.

VA HANDBOOK 5021/15 JULY 19, 201A HANDBOOK 5021/25 DECEMBER 28, 201

(1) Employees Other Than Chiefs of Staff, Facility Directors, and Other Key VHA
  employees (a) The completed Board action and all related documents will be sent to the
  Chief of Staff (or Nurse Executive, as appropriate) for review. (This includes summary
  reviews completed by VISN or Regional Professional Standards Boards, and summary
  reviews conducted at other VA facilities, including VA Central Office.)

(2) The Chief of Staff (or Nurse Executive) will comment on the Board recommendations and send these comments, the Board Action, and related documents to the facility Director.

(3) (b) The facility Director, or designee, may approve, disapprove, or modify the Board's recommendation on the Board Action. In making this decision, the facility Director may seek additional advice and information, if needed. (2) Chiefs of Staff (a) The Central Office Board will forward the board action containing their recommendations, alon

# EXHIBIT 8

4. COMPOSITION OF BOARDS. Whenever possible, PSBs will be composed of three or five

employees from the same occupation as the individual being considered. When three or five

members from the same occupation are not available, appropriately qualified individuals from

other occupations may be appointed, provided the board is composed of a majority of the

April 6, 2020 VA HANDBOOK 5005/129 PART II CHAPTER 3 II-87

employees from the occupation involved (see note below). When the appropriate minimum

number of employees in the occupation is not available or the number of employees is too small

to provide for an independent review, an alternate board must be used.

5. BOARD FUNCTIONS. The primary functions of boards are to: a. Review and act on

employment applications and determine whether the applicant meets the requirements set forth in

VA qualification standards. Sound professional and administrative judgment will be exercised in

reviewing applications to ensure that VA obtains the best qualified personnel. b. Review

completely an individual's qualifications for advancement by an examination of the personnel

folder, proficiency reports or performance appraisals, supervisory evaluations, and other

pertinent records; and to make recommendations based on their findings. c. Conduct

probationary reviews for individuals appointed under 38 U.S.C. 7401(1), or as part time or

intermittent RNs under 38 U.S.C. 7405(a)(1). d. Execute VA Form 10-2543, Board Action. e.

National boards make recommendations to the Under Secretary for Health or designee on

appointments and advancements, and on probationary reviews of individuals appointed under 38

U.S.C. 7401(1), or as part time or intermittent RNs under 38 U.S.C. 7405(a)(1), which require

approval in Central Office. This includes recommendations on requests for promotion reconsideration by registered nurses.

# EXHIBIT 9

ALEDA E. LUTZ VETERANS AFFAIRS MEDICAL CENTER
SAGINAW, MICHIGAN

MEDICAL CENTER MEMORANDUM 11-24                    DECEMBER 2016

## RAPID RESPONSE

1.     **PURPOSE**   To define an immediate available resource for the acute assessment of anyone on the main Saginaw VA campus whose status is deteriorating, changing or whose status is concerning to staff or visitors. Research shows that critical inpatient events are often preceded by various signs of clinical deterioration for as long as six to eight hours before an event. Early recognition and response to such warning signs can be extremely valuable in preventing arrests, saving a person's life, and preventing the need for more intensive health care.

2.     **POLICY**    This policy covers patients and non-patients on the main Saginaw VA campus.  The Rapid Response is for help at any time to assist in the care of a person who appears acutely ill, before the patient has a medical emergency.

3.     **RESPONSIBILITIES**

      a.     Advanced Cardiovascular Life Support (ACLS) Licensed Independent Practitioners (LIPs)/Hospitalists
      b.     Acute Care Telemetry Unit (ACTU) ACLS certified Nurse
      c.     Licensed Registered Respiratory Therapist (LRRT)
      d.     All VA employees and volunteers
      e.     Switchboard Operator
      f.     ACTU Nurse Manager
      g.     Chairperson, ACTU Committee
      h.     Members ACTU Committee
      i.     Chief of Medicine
      j.     ACLS ACTU Registered Nurse
      k.     Respiratory Therapy Supervisor

4.     **PROCEDURE(S)**

      a.     The following staff is designated as rapid response responders and will respond within 5 minutes to the patient location upon request:

      (1)     Assigned ACTU RN

      (2)     Assigned LRRT

      (3)     Assigned LIP/Hospitalist

      b.     Criteria for calling for rapid response includes the following, but is not limited to:

      (1)     Staff/Patient/Family member is concerned about the patient.

MEDICAL CENTER MEMORANDUM 11-24                        DECEMBER 2016

  (2) Sudden change in patients condition, such as:

  (a) Heart rate

  (b) Systolic blood pressure

  (c) Respiratory rate

  (d) Pulse oximetry

  (e) Significant bleeding

  (f) Seizure

  (g) Acute mental status changes (i.e. agitation, delirium)

  (h) Urine output

  (i) Uncontrolled pain

  (j) Fall that does not appear to be a medical emergency.

 c. Process: To initiate a request for rapid response.

  (1) Call switchboard operator by dialing 13222. Ask for a Rapid Response to be paged to the specific location of the person in need (building, floor, room, etc.).

  (2) Switchboard Operator enters the designated group pager number for Rapid Response and activates a verbal message stating, "Rapid response requested in building _____, floor_____, room_____, etc., (repeated) Rapid response requested in building _____, floor_____, room_____, etc.

  (3) Rapid response staff responds to person in need.

  (4) Person/Staff member who initiated the Rapid Response should be available for the Rapid Response team.

  (5) Assessment is completed and recommendations made.

  (6) Assessment is documented in CPRS by LIP/Hospitalist using the template note titled "Rapid Response".  This note includes Situation, Background, Assessment, and Recommendations (SBAR) and the disposition of the person.

  (7) Rapid Response Debriefing Form is completed by RN Rapid Response responder and given to the ACTU Nurse Manager.

 d. The ACTU Nurse Manager is responsible for:

-3-

MEDICAL CENTER MEMORANDUM 11-24                    DECEMBER 2016

    (1)    Assignment of the rapid response pager to the appropriate ACTU Nurse.

    (2)    Collection and data assembly of Rapid Response Debriefing Forms.  Quarterly reporting of inpatient rapid responses will be made to the ACTU Committee for analysis and process improvement.

    e.    The Respiratory Therapy Supervisor is responsible for assignment of the rapid response pager to LRRT staff.

    f.    The Chairperson of the ACTU Committee will oversee rapid response activities. Monthly data will be reviewed by the Committee members with ongoing assessments for process improvement as identified.

    g.    The Chief of Medicine is responsible for assignment of the rapid response pager to hospitalist staff.

5.    **REFERENCE(S)**    Joint Commission Manual for Accreditation Institute for Healthcare Improvement Tools

6.    **RESCISSION(S)**    MEDICAL CENTER MEMORANDUM 11-24, Rapid Response, Dated December 2013.

7.    **REVIEW DATE**    December 2019.

004 Geriatric and Extended Care Services


/s/
GINNY L. CREASMAN, Pharm.D., FACHE
Medical Center Director

-4-

MEDICAL CENTER MEMORANDUM 11-24                    DECEMBER 2016

Attachment A

| | | |
|---|---|---|
| Name:_____ | DOB:_____ | |

Rapid Response Date and Time:_____ Rapid Response Location:_____
Team Arrival Time:_____

| **Review Elements of Rapid Response (RR)** | **COMMENTS** |
|---|---|
| Yes    No    Did all members of the RR Team arrive? | |
| Yes    No    Did all members of the RR Team arrive with 5 minutes of RR page? | |
| Yes    No    Did the initiator of the RR page remain to provide information to the RR team? | |
| Yes    No    Any issues identified that need to be addressed? | |
| Yes    No    Was there effective leadership? | |

| Staff Satisfaction | Poor = 1 (explain)   Good = 3   Excellent = 5 |
|---|---|
| Physician Satisfaction: | 1   2   3   4   5 |
| Nurse Satisfaction: | 1   2   3   4   5 |
| Respiratory Therapy Satisfaction: | 1   2   3   4   5 |

| | |
|---|---|
| Yes    No    Unanticipated Events-explain if yes | |
| Yes    No    Did the RR debriefing detect a problem? –explain if yes | |

_____

Assessment (See back page):
  Green          Yellow          Orange          Red

Disposition:  _____Remained in room
              _____Transferred    a. _____ACTU
                                  b. _____VA Facility
                                  c. _____ Local Facility
                                  d._____UCC
                                  e._____Other:_____

Other Comments:


Signature of Person Completing this Form: _____

MEDICAL CENTER MEMORANDUM 11-24                              DECEMBER 2016

Attachment B

| | 3 | 2 | 1 | 0 | 1 | 2 | 3 | |
|---|---|---|---|---|---|---|---|---|
| Respiratory rate per minute | | Less than 8 | 8 | 9-17 | 18-20 | 21-29 | ≥30 | Green = 0-1 Score |
| Heart rate per minute | | Less than 40 | 40-50 | 51-100 | 101-110 | 111-129 | ≥130 | |
| Systolic blood pressure | ≤ 70 | 71-80 | 81-100 | 101-159 | 160-199 | 200-220 | >220 | Yellow= 2-3 Score |
| Conscious level (AVPU) | Unresponsive | Responds to pain | Responds to voice | Alert | Agitation or confusion | New onset of agitation or confusion | | |
| | | | | | | | | Orange = 4-5 Score |
| Temperature | | <95.0°F (35.0°C) | 95.0-96.8°F (35.05-36°C) | 96.9-100.4°F (36.05-38°C) | 100.5-101.3°F (38.05-38.5°C) | ≥101.4°F (38.55°C) | | |
| | | | | | | | | Red = ≥ 6 Score |

## When Completed turn in to Acute Care Telemetry Unit Nurse Manager

ALEDA E. LUTZ VETERANS AFFAIRS MEDICAL CENTER
SAGINAW, MICHIGAN

MEDICAL CENTER MEMORANDUM 11-05A                    JULY 2018

## CODE BLUE/MEDICAL EMERGENCY RESPONSE

1.    **PURPOSE**: The purpose of this policy is to define the process of responding to a "CODE BLUE" medical emergency within the main campus facility, facility grounds, Annex, Michigan Clinic building, and at the Community Based Outpatient Clinics (CBOCs).

2.    **POLICY**:   When indicated, cardiopulmonary resuscitation will be initiated for all patients, EXCEPT those with a known "DO NOT RESUSCITATE" (DNR) order, and continued until otherwise directed by a physician. If the DNR status is unknown, personnel will initiate intervention until otherwise directed.  Refer to Medical Center Memorandum 11-37, Do Not Resuscitate Orders for Inpatient and Outpatient, for additional information.

3.    **RESPONSIBILITIES**:
    a.    Medical Center Director
    b.    All VA employees and volunteers
    c.    Switchboard Operators
    d.    Advanced Cardiac Life Support (ACLS), Acute Care Telemetry (ACT) Certified
        Staff (nurses and providers)
    e.    Registered Nurse (RN)
    f.    Respiratory Therapy
    g.    Licensed Practical Nurses (LPN)
    h.    Nurse Managers
    i.    ACLS Hospitalist/Medical Officer of the Day (MOD)
    j.    ACLS Licensed Independent Practitioners (LIP)
    k.    VA Police
    l.    ACT Committee
    m.   Patient Administrative Staff
    n.    Logistics
    o.    ACLS Urgent Care Nurse

4.    **DEFINITION**:   A "CODE BLUE" is any medical emergency.

5.    **PROCEDURES**:   Upon recognition of a medical emergency, the discoverer will activate the code blue emergency response as follows:

    a.    <u>Inside Main Buildings #1 and #22</u>:

(1)     Dial 13222 on any medical center phone (direct line to the switchboard operator), state "Code Blue" and its whereabouts clearly - "Code Blue in (Building, floor, and location)"; repeat this message to the operator.

(2)     Push "Code Blue" alarm on wall panel above head of bed in the inpatient room.

(3)     The operator will notify the Code Blue team in the following sequence:

(a)     Announce the Code Blue, including the building, floor and location on the audio paging system (repeated once).

(b)     Activate the Code Blue Team by way of pagers (see table).

| CODE BLUE TEAM RESPONDERS | |
|---|---|
| **Team Member** | Role |
| ACLS, ACT RN | ACLS |
| Respiratory Therapist/Technician | Airway management and pulse oximetry (bring oximeter to code) C02 sensor post intubation. |
| One RN or LPN from CLC1 and CLC2 | Basic Life Support (BLS)/Support |
| Urgent Care Clinic ACLS RN (during administrative hours) or ACLS Nursing Supervisor (during non-administrative hours) | ACLS |
| ACLS Hospitalist, MOD, or Designee | ACLS ACLS Code Leader |

(4)     Staff in the area where the code is occurring is responsible to initiate BLS/ Automated External Defibrillator (AED) protocol.

(5)     When the cart arrives, the appropriate staff will:

(a)     Establish oxygenation with Ambu bag at 15 liters/minute.

(b)     Establish intravenous (IV) access.

(c)     Clear the hallway of obstruction for possible transfer of the patient, if needed.

(d)     Remove other patient/visitors from the area.

(6)     The first arriving ACLS RN will initiate ACLS guidelines until the ACLS Code Leader arrives. All further orders will be given only by the ACLS Code Leader.

(7)     Code blue team member is responsible for notifying the operator to cancel the emergency and announce "all clear" once the Code Blue is terminated/not indicated.

b.     All Weiss Street grounds and buildings, except the inside of buildings #1 and

#22:

(1)    The first person arriving on the scene should dial (989) 321-4222 (or 989-497-2500, x13222), or send someone to call x13222 from an internal phone to announce a Code Blue (indicating the location, building, floor, etc.).

(2)    VA Police will respond immediately with Automated External Defibrillator (AED) and emergency supplies. Basic Life Support (BLS) protocol will be initiated.

(3)    The ACLS Nurse/Hospitalist/MOD arriving on the scene will determine if 911 will be called, or if patient should be transported to Urgent Care Clinic (UCC).

(4)    An emergency crash cart will not be taken to the scene.

c.    Code Blue Medical Emergency Response in the CBOCs and Medical Center Annex: Staff will bring AED and emergency supplies and initiate BLS/AED protocol. If the victim is unresponsive, pulseless, and/or apneic call 911. Attachment A will be used to document a Medical Emergency at the CBOCs. This form will be scanned into the Medical Record by PAS and attached to "Code Blue" progress note upon completion. The CBOC Nurse Manager will be notified of the Code Blue event by nursing personnel at the CBOC and ensure documentation.

d.    Code Blue Medical Emergency during Transport in VA approved Vehicles: VA staff initiate BLS protocol and call 911.

e.    Documentation Requirements (Hand Off Documentation):

(1)    Personnel with knowledge of the events leading up to the emergency are responsible for relating all details to the Code Team for accurate documentation.

(a)    The first arriving ACLS RN of the Code Blue team will complete the Code Blue Medical Emergency Report (Attachment B). If the "etiology" is marked as "other", documentation on Attachment B must include date, time code paged, time code team arrived, location, discovered/witnessed by, and etiology.

(b)    The first arriving ACLS RN will ensure that Attachment B is completed and that a copy is placed in the Inpatient Nurse Manager's mailbox on the ACT unit. The inpatient Nurse Manager or designee will ensure the original is scanned into the medical record. If a code blue occurs off site Attachment A will be faxed to the ACT Inpatient Nurse Manager, per Medical Center Memorandum 90-11, Facsimile Service.

(2)    The ACLS RN or ACLS Code Leader will call for a debriefing immediately after the code. The debriefing will address any identified problems. A debriefing form (Attachment C) will be completed by the ACLS RN after each Code Blue/Medical Emergency called regardless of "etiology"; for quality monitoring purposes. The form will be placed in the Inpatient Nurse Manager's mailbox on the ACT unit. If a code blue occurs off site a

debriefing form (Attachment C) will be faxed to Inpatient NM, following Facsimile Service Medical Center Memorandum 90-11.

(3)     CPRS Documentation - the ACLS Code Leader will complete a Computerized Patient Record System (CPRS) "Code Blue Report" note regardless of "etiology" of code.

(4)     For CODE BLUE events at the CBOCs, the designated Recorder is responsible for completing the Code Blue/Medical Emergency Report (Attachment A) and Code Blue/Medical Emergency Debriefing form (Attachment C).

(5)     The ACT Inpatient Nurse Manager will track the Code Blue/Medical Emergency Reports and Code Blue Debriefing forms.  The Inpatient ACT Nurse Manager in conjunction with the ACT Committee Chairman is responsible to evaluate the Code Blue forms and to prepare a quarterly report for review by the ACT Committee for process improvement.

(a)     Each event should be tracked, trended, and benchmarked both internally and externally against recognized national standards and best practices.

(b)     Code Blue events resulting in initiation of BLS or ACLS protocols must be reviewed for the presence of:

(1)     Errors or deficiencies in technique or procedures

(2)     Lack of availability or malfunction of equipment

(3)     Appropriateness of interventions performed against national standards of care

(4)     Clinical issues or patient care issues such as failure to rescue, which may have contributed to the occurrence of cardiopulmonary event, and

(5)     Delays in initiating CPR both in house, and problems in obtaining Emergency Medical Services or use of 911 call system when the event occurs on campus

(c)     Crash Cart Exchange: The following activities will be initiated by staff in the area where the Code Blue occurs following the openings/use of crash cart:

(1)     After the completion of code, area staff to notify Logistics (or Nursing Supervisor during non-administrative hours) that an exchange cart is needed.

(2)     At the completion of the code, the nurse will place the colored security bag over each opened tray of medications and seal the bag prior to locking cart for return to Logistics.

f.     AED Cart Restocking:  The AED carts are restocked by the staff in the area where the AED cart is located.

MEDICAL CENTER MEMORANDUM 11-05A                                    JULY 2018

    g.    <u>Crash Cart and AED Cart Location and Response Teams</u>:  Attachment D.

    h.    Nursing will report all code blues at Morning Report.

6.    **<u>REFERENCES</u>**:

    <u>VHA Directive 1177 Cardiopulmonary Resuscitation (CPR), Basic Life</u>
      <u>Support, and Advanced Cardiac Life Support (ACLS) Training for Staff.</u>
    Medical Center Memorandum 11-78, Out of Operating Room (OR)
      Emergency Airway Management.
    Medical Center Memorandum 136-37 Use of Station Vehicles for
      Patient Transportation.
    Medical Center Memorandum 11-37, Do Not Resuscitate Orders-
      Inpatient and Outpatient.
    <u>VHA Directive 2008-063, Oversight and Monitoring of</u>
      <u>Cardiopulmonary Resuscitative Events and Facility</u>
      <u>Cardiopulmonary Resuscitation Committees, dated October 17,</u>
      <u>2008</u>.
    Joint Commission Manual for Accreditation.
    Medical Center Memorandum 90-11 Facsimile Service.

7.    **<u>RESCISSION</u>**:    Medical Center Memorandum 11-05A, Code Blue/Medical
Emergency Response, dated September 2017.

8.    **<u>REVIEW DATE</u>**:    July 2019 (annual review required).

111 Medical Service

/s/
KARANDEEP SRAON, MBBS, MBA, FACHE
Acting Medical Center Director

Attachments

MEDICAL CENTER MEMORANDUM 11-05A                                    JULY 2018

## ATTACHMENT A

### CBOC/Transport Vehicles/Medical Center Annex/Police - Code Blue/Medical Emergency Report

Date: _____     Time Code Paged: _____     Time Help Arrived: _____

Time CPR Started: _____     Time CPR Ended: _____

Location: _____          Time EMS Arrived: _____

Discovered/Witnessed by: _____

Etiology of Arrest: _____Respiratory     _____Cardiac     _____ Seizure     _____Other

Airway:   _____ Rescue Breathing   _____ Oral Airway _____ Ambu Bag _____ Other

Use of Defibrillator/AED:

| Time | Time | Time | Time | Time |
|------|------|------|------|------|
|      |      |      |      |      |

Description of Incident and Outcome:

_____

_____

_____

_____

_____

_____

_____

Signature: _____

**Provider ACLS Code Leader:** (Enter Computerized progress note to include staff account of events
immediately preceding code, time of arrest, code diagnosis, summary of resuscitation measures and outcome).
**If** computer is down, write a brief comment below and sign.
**Transport Vehicle ACLS Code Leader:** Notify supervisor of event. Fill out the form completely, original to
supervisor for scanning into medical record, copy to Inpatient ACT Nurse Manager.


Patient Name: _____

Date of Birth: _____

Original scanned into medical record by PAS
Copy to Inpatient ACT Nurse Manager

MEDICAL CENTER MEMORANDUM 11-05A                              JULY 2018

## ATTACHMENT B

### CODE BLUE/MEDICAL EMERGENCY REPORT

Date: _____     Time Code Paged: _____   Time Code Team Arrived: _____     Location: _____

Time CPR started: _____ Ended: _____   Discovered/witnessed by: _____+

ETIOLOGY:      [ ] Respiratory     [ ] Cardiac        [ ] Seizure       [ ] Other_____

RHYTHM:        [ ] Ventricular Fibrillation (VF)      [ ] PEA        [ ] Asystole       [ ] Tachycardia

               [ ] Ventricular Tachycardia (VT)      [ ] Symptomatic Bradycardia         [ ] Other_____

AIRWAY:        [ ] AmbuBag        [ ] Oxygen ___liters per minute via _____

INTUBATION:    Time _____     Size (circle device used) ET Tube or King Airway _____ By _____

ET tube placement confirmed via End Tidal CO2 Colometric Detector: _____Yes _____Not Applicable

| DEFIBRILLATION/CARDIOVERSION | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Time | | | | | | | | | |
| Joules | | | | | | | | | |

| MEDICATION | Dose/Time & Initials of who administered Drug | Dose/Time & Initials of who administered Drug | Dose/Time & Initials of who administered Drug | Dose/Time & Initials of who administered Drug | Dose/Time & Initials of who administered Drug | Dose/Time & Initials of who administered Drug | Dose/Time & Initials of who administered Drug |
|---|---|---|---|---|---|---|---|
| Adenosine | | | | | | | |
| Amiodarone | | | | | | | |
| Atropine | | | | | | | |
| Calcium Chloride | | | | | | | |
| Dextrose 50% | | | | | | | |
| Epinephrine | | | | | | | |
| Lidocaine | | | | | | | |
| Magnesium Sulfate | | | | | | | |
| Sodium Bicarbonate | | | | | | | |
| Verapamil | | | | | | | |
| Others: | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| IV | Time | Solution | Site | Time | O2 SAT | BP | Pulse | Resp Rate | Pupils |
|---|---|---|---|---|---|---|---|---|---|
| [ ] Existing [ ] New | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Patient Name:                                          VA Form 10-31 (655)
DOB:

MEDICAL CENTER MEMORANDUM 11-05A                                         JULY 2018

ATTACHMENT B (Cont.)

TEAM IN ATTENDANCE (list initials used on reverse side if applicable)

Was there a patient fall involved with this Code Blue? <u>Yes or No</u>
If so, please complete the Joint Patient Safety Reporting (JPSR) – link available on the internet home page, or contact the Patient Safety Office at Ext. 13037.

ACLS Code Leader _____          Others:(name and professional designation)

ACLS RN _____                 _____

_____          _____

Resp. Therapist _____          _____

Recorder _____          _____


**OUTCOME:**   [   ] Survived – Transferred to _____ at (time) _____
[   ] Expired at (time) _____
[   ] Other (explain) _____


RECORDER SIGNATURE:_____


**Attach CODE summary (From Defibrillator) here. If NA, space may be used for a written summary.**




**MD ACLS CODE LEADER:**  (Enter computerized "Code Blue Report " note to include staff account of events immediately preceding code, time of arrest, code diagnosis, summary of resuscitation measures, and outcome).
**If** computer is down, write brief comments below and sign.



Patient Name:  _____

Date of Birth:  _____

Original scanned into Medical Record by PAS
Copy to Inpatient ACT Nurse Manager
Copy attached to Nursing 24 Hour Report/other designated Nursing report form for outpatients

MEDICAL CENTER MEMORANDUM 11-05A                                    JULY 2018

ATTACHMENT C

## CODE BLUE/MEDICAL EMERGENCY DEBRIEFING GUIDE

| | |
|---|---|
| Patient Name: _____ | DOB: _____ |
| Arrest Date and Time:_____ | Code Location:_____ |
| Time of Code Team Arrival: | Outcome of Code:  Survived / Expired |

| Review Elements of a Good Code | COMMENTS |
|---|---|
| ✓  Did all members of the Code Blue Team arrive at announced location within 2 minutes? | |
| ✓  Was there an appropriate number of staff (or too many, few, etc.)? | |
| ✓  Did the ACLS Code Leader identify him/herself timely and clearly? | |
| ✓  Were all necessary supplies/medications readily available/accessible? | |
| ✓  Was the cardiac rhythm determined within 5 minutes? | |
| ✓  Was the airway managed appropriately?<br>✓  Was the airway established?<br>✓  (Complete reverse side, Airway Management Critique) | |
| ✓  Was IV access established timely? | |
| ✓  Were emotional issues handled effectively? | |
| ✓  Was there effective leadership? | |

| Staff Satisfaction | |
|---|---|
| Physician Satisfaction: ☐ Yes  ☐ No (explain) | |
| Nurse Satisfaction: ☐ Yes  ☐ No (explain) | |
| Respiratory Therapy Satisfaction: ☐ Yes  ☐ No (explain) | |
| Safety Breech: ☐ Yes (explain)    ☐ No | |
| Unanticipated Events: ☐ Yes (explain)    ☐ No | |

Did the post-code debriefing detect a problem?  ☐ No  ☐ Yes (explain)

Other Comments:

(COMPLETE REVERSE SIDE-AIRWAY MANAGEMENT)

Completed form to:  Inpatient ACT Nurse Manager

MEDICAL CENTER MEMORANDUM 11-05A                                      JULY 2018

ATTACHMENT C (Cont.)

## CODE BLUE - AIRWAY MANAGEMENT CRITIQUE

1.     Patient Name and DOB: _____

2.     Clinician Responsible for Airway Management: _____

3.     How was airway managed (circle all that were used):

      a.  Bag-valve mask
      b.  Naso-pharyngeal airway
      c.  Oro-pharyngeal airway
      d.  Endotracheal tube
      e.  King Airway
      f.  Other (please specify) _____

**Answer questions 4 – 6 only if attempted or successful intubation**

4.     # Intubation attempts: _____

5.     # Esophageal Intubations: _____

6.     Ultimately successfully intubated: (yes or no)

7.     Confirmation of established airway by: (circle all that apply)

      a.  End tidal $CO_2$ colorimetric detector
      b.  Other (please specify): _____

8.     Were any paralytic agents used: (yes or no):  If yes, please list:

      a.  _____
      b.  _____
      c.  _____

9.     Patient's status immediate post-event: (Survived, Did Not Survive)


PERSON COMPLETING FORM:_____DATE: _____

REFERENCE:   Medical Center Memorandum 11-78, Out of Operating Room (OR) Emergency
Airway Management

11

MEDICAL CENTER MEMORANDUM 11-05A                    JULY 2018

ATTACHMENT D
CURRENT LOCATIONS

A)  Red Crash Carts

| FLOOR | LOCATION | DEFIBRILLATOR | DESIGNATED STAFF RESPONDS WITH CART TO: |
|---|---|---|---|
| 1st Floor | Urgent Care | (2) LIFEPAK 20 | UC staff responds to – Urgent Care Clinic |
| 2nd Floor | Imaging | LIFEPAK 20 | Imaging staff responds to - All 2nd floor areas in building 1, except Nuclear Medicine. |
| 2nd Floor | Nuclear Medicine | LIFEPAK 20 | Nuclear Medicine staff responds to Nuclear Medicine. |
| 3rd Floor | 3 East | LIFEPAK 20 | 3B staff responds to all 3rd, 4th, 5th floor areas in building 1. |
| Ambulatory Surgery – 3rd Floor | Ambulatory Surgery | LIFEPAK 20 | Ambulatory Surgery staff responds to- Ambulatory Surgery area |
| CLC Bldg#22 | CLC 1 | LIFEPAK 20 | Building 22: basement and 1st floor Building 1: basement and 1st floor Hallway connecting building 1 and 22 |
| CLC Bldg#22 | CLC 2 | LIFEPAK 20 | CLC 2 staff responds to all 2nd floor areas in Building 22 including hallway to Building #1. |

B)  Yellow AED Carts

| FLOOR | LOCATION | AED | RESPONDS TO |
|---|---|---|---|
| 1st Floor | Red Team | LIFEPAK 20 | Entire 1st Floor Building 1 except Urgent Care |
| 4th Floor | 4 West | LIFEPAK 20 | Entire 4th Floor Building 1 |
| 5th Floor | 5 West | LIFEPAK 20 | Entire 5th Floor Building 1 |
| Bldg 22-Basement | PM & RS | LIFEPAK 20 | Bldg. 22- All basement areas |

C). AED

| Every CBOC | Every CBOC | LIFEPAK 1000 | Respective CBOC clinic |
|---|---|---|---|
| Medical Center Annex | Medical Center Annex | LIFEPAK 1000 | Medical Center Annex |
| N/A | Transport Vehicles | LIFEPAK 1000 | Codes while in travel status |
| N/A | VA Police Car | LIFEPAK 1000 | All Weiss Street grounds and buildings, except the inside of buildings #1 and #22 |

# EXHIBIT 10

Case 5:19-cv-10838-JEL-APP ECF No. 82, PageID.1529 Filed 10/21/21 Page 73 of 81

already scheduled me
unless you let me know.

Mon, May 21, 10:38 PM

Hi, just spoke to Dr
Mlejnek at Covenant ER,
and I just asked him a
generic question about the
use of an AED, and he said
that just because a patient
has chest pain, they do not
attach an AED, and pts
come in all the time with
chest pain and no AED
gets put on them.

Tue, May 22, 9:18 AM



American
Heart
Association
life is why

# ADVANCED CARDIOVASCULAR LIFE SUPPORT

PROVIDER MANUAL

# Acute Coronary Syndromes Case

**Introduction**

The ACLS provider must have the basic knowledge to assess and stabilize patients with ACS. *Patients in this case have signs and symptoms of ACS, including possible AMI.* You will use the ACS Algorithm as the guide to clinical strategy.

The initial 12-lead ECG is used in all ACS cases to classify patients into 1 of 3 ECG categories, each with different strategies of care and management needs. These 3 ECG categories are ST-segment elevation suggesting ongoing acute injury, ST-segment depression suggesting ischemia, and nondiagnostic or normal ECG. These are outlined in the ACS Algorithm, but STEMI with time-sensitive reperfusion strategies is the focus of this course (Figure 20).

Key components of this case are

- Identification, assessment, and triage of acute ischemic chest discomfort
- Initial treatment of possible ACS
- Emphasis on early reperfusion of the patient with ACS/STEMI

**Rhythms for ACS**

Sudden cardiac death and hypotensive bradyarrhythmias may occur with acute ischemia. Providers will understand to anticipate these rhythms and be prepared for immediate attempts at defibrillation and administration of drug or electrical therapy for symptomatic bradyarrhythmias.

Although 12-lead ECG interpretation is beyond the scope of the ACLS Provider Course, some ACLS providers will have 12-lead ECG reading skills. For them, this case summarizes the identification and management of patients with STEMI.

**Drugs for ACS**

Drug therapy and treatment strategies continue to evolve rapidly in the field of ACS. ACLS providers and instructors will need to monitor important changes. The ACLS Provider Course presents only basic knowledge focusing on early treatment and the priority of rapid reperfusion, relief of ischemic pain, and treatment of early life-threatening complications. Reperfusion may involve the use of fibrinolytic therapy or coronary angiography with PCI (ie, balloon angioplasty/stenting). When used as the initial reperfusion strategy for STEMI, PCI is called *primary PCI*.

Treatment of ACS involves the initial use of drugs to relieve ischemic discomfort, dissolve clots, and inhibit thrombin and platelets. These drugs are

- Oxygen
- Aspirin
- Nitroglycerin
- Opiates (eg, morphine)
- Fibrinolytic therapy (overview)
- Heparin (UFH, LWMH)

Additional agents that are adjunctive to initial therapy and will not be discussed in the ACLS Provider Course are

- β-Blockers
- Adenosine diphosphate (ADP) antagonists (clopidogrel, prasugrel, ticagrelor)
- Angiotensin-converting enzyme (ACE) inhibitors
- HMG-CoA reductase inhibitors (statin therapy)
- Glycoprotein IIb/IIIa inhibitors

**From:** Joseph, Angela A.
**Sent:** Wednesday, March 29, 2017 10:14 AM
**To:** Albito, Anthony L <Anthony.Albito@va.gov>
**Subject:** RE: monitor set up

ECG to alarm if leads off

---

**From:** Albito, Anthony L
**Sent:** Wednesday, March 29, 2017 10:12 AM
**To:** Joseph, Angela A.
**Subject:** RE: monitor set up

Thank You..

---

**From:** Joseph, Angela A.
**Sent:** Wednesday, March 29, 2017 10:11 AM
**To:** Albito, Anthony L
**Subject:** monitor set up

ADULT PATIENT MONITOR CONFIGURATIONS

ALARM <u>on</u> to alert when monitor readings fall below or above set limits

|                   | LOW LIMIT | HIGH LIMIT |
|-------------------|-----------|------------|
| SBP               | 90        | 180        |
| DBP               | 50        | 110        |
| MAP               | 60        | 90         |
| HR                | 60        | 100        |
| RR                | 12        | 24         |
| T                 | 34        | 39         |
| POX               | 90        | 100        |
| CO2 (capnogram)   | 30        | 50         |

# EXHIBIT 11

Abdomen: soft, NT, BS+.
Extremities: able to move all extremities, but appears currently lethargic.
Psychiatric: Altered mental status see note below.

Results:

CT Head was negative for an acute process.

| ARTERIAL BLOO | May 07 2018 16:18 | Units | Reference Ranges |
|---|---|---|---|
| PH | 7.31 L | | 7.35 - 7.45 |
| PCO2 | >100 H* | mmHg | 35 - 45 |
| PO2 | 65 L | mmHg | 80 - 100 |
| O2HB% (SAT) | 92.0 | % | Ref: >94.9 |
| BASE EXCESS | 22.0 H | mmol/L | -2 - 2 |
| BICARBONATE | 54.5 H | mmol/L | 22 - 26 |
| RESP RATE | 28 | | |

A/P:
1. Altered mental status, confusion, rule out delirium, rule out dementia.
2. Patient appears very lethargic, and obtunded, and unable to cooperate with mental health evaluation.
3. Other lab tests and ABGs ordered, the ABGs show patient with narcosis due to highly elevated PCO2 levels. Will place on BiPAP, and consider transfer to facility where patient can be intubated.
4. He also has elevated ammonia level, and elevated carbon monoxide levels although the etiology of this is not known at the present time. Have ordered lactulose, and will increase O2
5. Will also order CT of the head to evaluate for any new causes for change in mental status.


05/07/2018 ADDENDUM                    STATUS: COMPLETED
Will transfer patient to Saginaw covenant for hypercapnia with hypoxia requiring intubation due to failed trial of BiPAP.

Case discussed with NP Lewis, okay for transfer. Will arrange ACLS ambulance, he has been accepted by Dr. McCadie at Saginaw covenant Hospital.

/es/ ANGELA ARUNA JOSEPH
MD
Signed: 05/07/2018 17:44

NAME OF ADDITIONAL CONTACT AT ACCEPTING FACILITY (optional)


TELEPHONE NUMBER OF ADDITIONAL CONTACT

**************************************************************
**

          SECTION VIII - REFERRING PHYSICIAN AND INSTITUTION
**************************************************************
**
NAME OF REFERRING FACILITY
VISN 10: Saginaw, MI VAMC

NAME AND WARD OF REFERRING PHYSICIAN
A Joseph M.D.   ACT

DATE AND TIME OF TRANSFER May 7,2018@17:45

TRANSPORTATION AUTHORIZED?  Yes

NON-VA MEDICAL SERVICES AUTHORIZED?  Yes

    Authorized by:NP Lewis

VA FORM 10-2649B "Physician Certification and Patient Consent for
Transfer" COMPLETED? Yes
=================================================================
===
THIS FORM MUST BE COMPLETED AND ELECTRONICALLY SIGNED BY THE
REFERRING PHYSICIAN
=================================================================
===
If patient's family is involved with decision-making, this
information was shared promptly:  No

Name of the approving official: NP Lewis

/es/ ANGELA ARUNA JOSEPH
MD
Signed: 05/07/2018 17:50

Receipt Acknowledged By:
05/08/2018 07:35       /es/ SALLY A LEWIS
                           MSN, ACNP-BC, ANP-BC

05/08/2018 ADDENDUM                STATUS: COMPLETED
Did discuss and approve this transfer.

/es/ SALLY A LEWIS
MSN, ACNP-BC, ANP-BC
 Signed: 05/08/2018 07:35
Facility: ALEDA E. LUTZ VAMC
=================================================================

# EXHIBIT 12

# Algorithm for Assessment of Pain Management

OPIOID SAFETY

Opioid Safety

TAKING OPIOIDS RESPONSIBLY

PAIN MANAGEMENT

Absolute Contraindications to Opioid Therapy

Key points that need to be documented when prescribing opioids
1. Patient's prior treatment history
2. History and Physical
3. Progress Notes
4. Orders
5. Procedure Reports
6. Consultation Reports
7. Other physician report
8. Anesthesia Reports
9. Lab Reports
10. Imaging and other reports